JOHN A. HALDERMAN v. GEO. S. WOODWARD, *as Assignee of the Kansas Insurance Co.,* GEO. D. FARR, *et al.*

1. MORTGAGE, *Foreclosure of; Personal Judgment; Error.* Where the testimony produced upon a trial to enforce the collection of a note signed by F., and to foreclose a mortgage executed by H. to secure the payment of the note, fails to show that H. is the principal debtor in the first instance, or ever became liable by any valid promise to F. or the payee of the note, to pay the same, *held,* error to render a personal money judgment against H.

2. MORTGAGOR, *When Not Personally Bound for Debt.* When a third person executes a mortgage on his real property by way of security for the payment of the note of another, and there is no covenant to pay the money secured by the mortgage, nor any express acknowledgment of indebtedness by the mortgagor, such mortgagor is not personally bound for the debt. The property only is held, and not the person.

3. SURETY, *Unreleased.* The payment and acceptance of part payment of a debt from the principal does not discharge or release the surety. Such a payment does not impliedly extend the time of payment of the balance overdue.

4. ——— Mere delay in bringing suit against the principal does not release the surety.

*Error from Leavenworth District Court.*

ON the 1st of November, 1873, *Geo. D. Farr,* who was then secretary of the Kansas Insurance Company, being desirous of purchasing some stock in that company, executed his promissory note for $40,000, payable one year after date, with interest at seven per cent. per annum, and delivered the same to said company, receiving in return for said note a certificate for 400 shares of its capital stock. *Farr* made arrangements with *John A. Halderman* and wife to execute a mortgage, as security for the payment of said note at maturity, viz.: on the 1st day of November, 1874, which mortgage was made, executed and delivered, with the note, to the company.

Some time afterward said *Farr* indorsed said certificate of stock in blank, and delivered it to *John A. Halderman,* to indemnify him as surety. The note was not paid at maturity,

nor has any interest or principal been paid by said *Halderman*, although there are indorsed on the note payments of interest to June 1, 1876.

*Farr*, in 1875, transferred the certificate to *Halderman* for a valuable consideration, and some time in 1876, *Halderman* surrendered said certificate, and obtained one in his own name. Prior to the date of such surrender, *Farr* voted on the stock, and was the registered owner and holder thereof.

On the 28th of May, 1877, an action was commenced against *Farr*, the *Haldermans*, and the other defendants in error alleged to have some claim or interest in or to the property mortgaged, by *Geo. S. Woodward*, assignee of said insurance company, which petition contained the following material allegations:

1st. That the Kansas Insurance Company is a corporation, with a capital stock of $100,000, and made an assignment to C. B. Pierce on the 25th day of November, 1876, and subsequently Geo. S. Woodward was appointed assignee in insolvency.

2d. That Halderman agreed, on November 1, 1873, to take $40,000 of stock, and to pay for it one year from that date.

3d. That the Kansas Insurance Company did issue to Farr, really as agent and trustee for Halderman, its certificate No. 18, for 400 shares, to be thereafter transferred, in consideration that said Halderman would pay said $40,000, with interest.

4th. That the certificate was assigned to J. A. Halderman, in consideration of which he agreed with Farr to pay said $40,000.

5th. That said certificate was transferred in blank by Farr, and that Halderman caused it to be filled up August 17, 1875.

6th. That the Kansas Insurance Company, August 16, 1875, issued a certificate, No. 48, to Halderman, for a like amount of stock, being for the same stock; that Halderman would then immediately pay said $40,000, with interest thereon at 7 per cent. from November 1, 1873, such payment to operate as a payment of said note.

7th. Absence of Halderman from the state for two years.

The petition contained the following exhibits: 1st, The note of Farr, with indorsement of three payments of interest; 2d, Certificate of stock to Farr; 3d, Mortgage of Halderman;

4th, Certificate to Halderman. And prayed for a personal judgment against Farr on the note, and also against Halderman for a foreclosure of the mortgage.

The mortgage contained this provision:

"*This grant* is intended as a mortgage to secure the payment of the sum of forty thousand dollars ($40,000) in one year, with interest thereon at seven (7) per cent. per annum, according to the terms of a certain promissory note this day executed and delivered by G. D. Farr to the said party of the second part; and this conveyance shall be void if such payment be made as therein specified. But if default be made in said payment, or any part thereof, as provided, then it shall be lawful for the said party of the second part, their successors and assigns, at any time thereafter, to sell the premises hereby granted, or any part thereof, in the manner prescribed by law; and out of the moneys arising from such sale to retain the amount then due for principal and interest, together with the costs and charges of making such sale, and a reasonable attorney's fee for foreclosure, and the overplus, if any, shall be paid by the party making such sale, on demand, to the said John A. Halderman, his heirs or assigns."

*Halderman* filed a sworn answer, denying every allegation in the petition that he ever assumed payment of the note, either to *Farr* or the insurance company, or promised to pay for the stock; to which the plaintiff filed a reply containing a general denial, not verified.

Upon these pleadings the cause was tried by the court, without a jury. The court made a general finding against *John A. Halderman,* and rendered a personal judgment against him and *Geo. D. Farr* for $37,800, and decreed it a lien on the mortgaged premises, and ordered the same to be sold to satisfy the judgment, interest and costs. *Halderman* duly excepted, and he brings the case here.

*Lucien Baker,* and *Henry M. Herman,* for plaintiff in error:

There could not, under the facts as shown in this case, have been a personal judgment against Halderman without a gross violation of all legal principles. It is well settled that where there is no covenant to pay the money secured by a mortgage, nor any express acknowledgment of indebted-

ness by the mortgagor, such mortgage creates no personal liability. Without an express covenant or agreement to pay, no action can be maintained against the mortgagors. (44 How. 368; 10 Johns. 57; 7 Cranch, 218; 12 Mass. 26; 5 Vt. 393; 2 Lans. 38; 2 Mod. 36; 3 N. Y. 264; 70 Ill. 549; 2 Munf. 337; 7 Watts, 360; 4 Cal. 294; 1 P. Wms. 292; Cromp. & J. 281; 6 Blackf. 162; 41 N. Y. 201.)

. There is no express admission or recital of any indebtedness in the mortgage. The consideration is, in consideration of $1. There is no promise or covenant to repay even this small sum, let alone the note of Farr, and the remedy is limited to the land described in the mortgage. (8 Minn. 232.)

When a third person makes a mortgage or pledges his property by way of security for the payment of the debt of another, such mortgagor is not personally bound for the debt. The property is held, but not the person, and no personal judgment can be rendered against such mortgagor. The land only is liable. (18 Iowa, 157; 1 La. An. 62; 12 Iowa, 459.)

The limit of liability of a person who mortgages his property, without personal liability, to secure the debt due from a friend, is the mortgaged property, and any surplus remaining in his hands from securities received for his own indemnity, after fully indemnifying him for damages resulting from the mortgage of his property. (35 Cal. 136.)

*H. W. Ide*, Receiver of Kansas Insurance Company, for defendants in error:

Halderman was not a surety, but a principal. The testimony all went to show that the transaction was for his benefit. Farr neither got, nor was he expected to get, any benefit from it. The most that can be said as against Farr is, that he consented to the use of his name in the transaction. It is evident from the circumstances that it was understood by all the parties that the stock should belong to Halderman, and not to Farr.

47—22 KAS.

The form of the transaction was not material; if the plaintiff in error preferred to obtain the stock through the medium of a trustee, he was none the less a principal to the transaction. *Qui facit per alium, facit per se.* This is a case where the relative situation and circumstances of the parties are very important to be considered; and what the parties did, as well as what they said, while consummating the transaction, are equally significant and potent circumstances to be considered. Judging from the testimony, Halderman and Farr said little, but did much. It is evident there was a complete understanding between them, and each knew what he was expected to do, and with a silence that is very suggestive, proceeded to do it. The whole of the transaction should likewise be considered. The alleged purchase of the stock by Halderman in August, 1875, was a part of the same transaction. It would be ridiculous to claim that this alleged purchase was *bona fide*, and had no connection with the original transaction. Plaintiff in error admits in his testimony that he paid nothing for the stock, and Farr says the matter, so far as he was concerned, was settled, and the inference would be, he was no longer in any manner to be considered as a party to the affair. Is it for a moment to be supposed that it was expected that the stock was to belong to Halderman, and that he was to pay nothing to anybody for it? The fact that Farr gave his note to the company is not inconsistent with the position that Halderman was a principal. Two parties may be liable for the same indebtedness — the one may give a note to evidence his liability, the other not; nevertheless they are equally liable. The taking of a note of a third party is not *prima facie* payment; and the burden of proof is on the debtor to show the contrary. (Edwards on Bills and Notes, p. 192; 14 Kas. 164; 16 Kas. 182.)

If Halderman was the purchaser of the stock, and liable for it, it was for him to show that Farr's note was received as payment; but he made no attempt to show any such thing. As between Halderman and Farr, the latter was the surety, and the former the principal.

The opinion of the court was delivered by

HORTON, C. J.: The only allegation of error discussed in the briefs is, that the finding of the trial court is not sustained by evidence, and is contrary to law.

It is asserted by counsel for plaintiff in error, that there was no testimony produced upon the trial to sustain the rendition of a personal judgment against John A. Halderman. In brief, that the allegations of the petition to the effect that Halderman was the principal debtor, in the first instance, and that he also became liable to the insurance company by a promise to Farr, and again by a promise to the company, to pay the said $40,000, were unsupported by any evidence. An examination of the record sustains this view. The testimony of the plaintiff in the court below was so short, we give it entire. It is as follows:

The plaintiff read in evidence the promissory note of G. D. Farr, and mortgage deed of John A. and Annie B. Halderman, and then said Halderman and Farr admitted that G. D. Farr was secretary, and E. Hensley president, of the Kansas insurance company, on November 1, 1873, and that they executed and delivered, as such officers, to Geo. D. Farr the certificate of 400 shares of stock, of November 1, 1873, No. 18, and that said Geo. D. Farr signed his name on the back of the certificate, where it appears on the copy set forth in the petition; and also admitted, that Edward Russell was secretary, and John A. Halderman vice president of the insurance company, on August 16, 1875, and that they, as such officers, signed and delivered to John A. Halderman the certificate of stock, No. 48, set forth in the petition.

Thereupon said Geo. D. Farr testified that—"Soon after it (certificate No. 18) was issued to me, I assigned the certificate to Halderman, as collateral security, on account of the execution by himself and wife of the mortgage they gave to secure the payment of the note. He kept the certificate for some considerable time, and then returned it to the company, and received in lieu thereof the aforementioned certificate No. 48. At the time certificate No. 18 was assigned to Halderman as collateral security, nor at any time thereafter, was anything said about his assuming payment of the note; but when it was agreed between us that he should have the stock abso-

lutely, it was understood that the whole matter, as between ourselves, was settled."

The plaintiff here rested his case.

On the part of John A. Halderman, his deposition was read. He stated:

"The note for $40,000, described in plaintiff's petition, was executed by George D. Farr to the Kansas insurance company, in consideration of a like amount of the stock of said company, and, so far as I know, for his own use and benefit, and not as my agent or trustee; that I had no claim or interest in the note, or the stock issued therefor, or in any stock issued to or held by said Farr; that at the time said stock was issued, nor at any other time, did I promise or agree to or with said Farr, or to or with said Kansas insurance company, to pay said note of $40,000, or any part thereof, or any other sum whatever; that I executed a mortgage to secure the payment of said note as a matter of form simply, for the accommodation of said George D. Farr."

Other matters appear in his cross-examination, but nothing to materially affect the case.

This testimony, giving it the most liberal construction in favor of the finding of the court, fails to establish any personal liability on the part of John A. Halderman. Counsel for defendant in error, Woodward, suggests that when Halderman received the certificate of stock No. 48, of the date of August 16, 1875, there was an implied promise to the insurance company to pay for it. The transaction simply shows an exchange of the certificates of stock. Certificate No. 18, held by Halderman as security for the mortgage executed by him and wife, was surrendered to the insurance company, and in lieu therefor the certificate No. 48 was taken. Certificate No. 18 was in the name of Geo. D. Farr, certificate No. 48 was in the name of John A. Halderman, but both represent like amounts of stock. In this, we perceive no implied promise on the part of Halderman to pay $40,000, or any other sum, to the insurance company for the stock.

Counsel for plaintiff in error further contend that the mortgagors were released and discharged by the acceptance

of interest from Farr on the note, and the delay in bringing suit.

Counsel assume without proof, that there was an express or an implied extension of time upon the note, on account of the payment of interest. Such is not the fact.

The indorsements of interest are as follows: "Interest paid to *Dec. 31, 1873;* interest paid to *Dec. 31, 1874;* interest paid to *June 1, 1876.*" There are no presumptions that such interest was paid prior to their dates. No agreement to extend the time of payment to Farr was proved. All the record shows, is the payment of parts of the amount due on the note on Dec. 31, 1873; Dec. 31, 1874, and June 1, 1876. At these dates the whole note was overdue. The acceptance of these various sums did not extend the time of payment of the residue; nor were said payments any consideration to sustain an agreement to extend the time of payment. (*Royal v. Lindsay,* 15 Kas. 591; *Jenness v. Cutler,* 12 Kas. 500.)

A simple delay is no ground to release a surety. The objection presented to the foreclosure of the suit upon that ground is not tenable. (*Ray v. Brenner,* 12 Kas. 105.)

The judgment of the court below will be modified in accordance with the views herein expressed. The evidence amply sustains the judgment of foreclosure and order of sale of the mortgaged premises.

All the Justices concurring.