# LYNDONVILLE NATIONAL BANK

v.

# T. C. FLETCHER.

OCTOBER TERM, 1895.

*Promissory note.   Forgery of surety's name to renewal.
Negligence.   Estoppel.*

1.  A bank owes the surety upon a promissory note discounted by
    it no duty to examine into the genuineness of his signa-
    ture upon a renewal, and is not liable for its neglect in
    failing to discover that such signature is a forgery, unless,
    perhaps, its neglect were so gross as to amount to bad
    faith.

2.  If the bank, believing the renewal to be genuine, stamps the
    genuine note "Paid," and delivers it to the maker, who
    thereupon shows it to the surety, telling him it is paid, and
    thereby induces him to alter his condition for the worse by
    the amount of the note, it is not estopped from maintaining
    a suit upon the original note by the fact that it stamped the
    note "Paid" instead of "Renewed," for, if the renewal had
    been genuine, as it without fault supposed, the original
    note would have been paid in fact.

3.  Nor is the bank estopped by having delivered the note with
    the stamp "Paid" upon it to the maker, thereby represent-
    ing to the surety that it was paid, for this representation
    was induced by the fraud of the maker through an in-
    nocent mistake upon its part, and a representation induced
    by fraud will not estop.

4.  Nor is it a case for the application of the rule that when one
    of two innocent parties must suffer from a mistake, he who
    makes the mistake must bear the loss, for here the chances
    of business have put the loss upon the surety.   He gave
    his note to the bank which he has never paid, and which
    the bank is not estopped from collecting.

Assumpsit.   Plea, the general issue with notice of special

matter. Trial by jury at the June term, 1895. At the close of the evidence the court directed a verdict for the plaintiff. The defendant excepts.

. *W. P. Stafford*, *C. A. Prouty*, *Harry Blodgett* and *Bates & May* for the defendant.

The plaintiff by stamping the note "Paid" and putting it into the hands of Walter notified the defendant that it had been discharged and the defendant acted upon that information to his prejudice. Hence, the plaintiff is estopped from maintaining this suit. *Carpenter* v. *King*, 9 Met. 511; *Baker* v. *Briggs*, 8 Pick. 1; *Harris* v. *Brooks*, 21 Pick. 195; *Bank* v. *Schofield*, 39 Vt. 590; *Bank* v. *Maskell*, 51 N. H. 116; *Bank* v. *Rudolf*, 5 Neb. 527; *Yale* v. *Watson*, 54 Minn. 173.

The question is not whether the plaintiff intended to deceive the defendant, but whether its conduct was reasonably calculated to that end. *West* v. *Guderian*, 3 Tex. Civ. App. 406; *Greene* v. *Smith*, 57 Vt. 268; *Louks* v. *Kenniston*, 50 Vt. 116; *Bank* v. *Hazard*, 30 N. Y. 226; *Hardy Bros.* v. *Bank*, 51 Md. 562; 7 Am. & Eng. Enc. of Law, p. 16; Her. Est., s. 953; Big. Est., 480.

*Smith & Sloane* and *Dickerman & Young* for the plaintiff.

A payment of a note in counterfeit money or forged paper is no payment. *Gilman* v. *Peck*, 11 Vt. 516; *Wemet* v. *Missiquoi Lime Co.*, 46 Vt. 458; *Farr* v. *Stevens*, 26 Vt. 303; *Gillman* v. *Peck*, 11 Vt. 516; *Bank* v. *Gore & Grafton*, 15 Mass. 75.

There was no negligence upon the part of the plaintiff in not detecting the forgery. *Frank* v. *Lanier*, 91 N. Y. 112.

There was no estoppel. The word "Paid" was stamped upon the note through the fraudulent act of Walter. A misrepresentation made through mistake or induced by fraud

will not create an estoppel. It has often been so held in cases similar to the one at bar. *Boynton* v. *Braley,* 54 Vt. 92 ; *Holden* v. *Ins. Co.,* 46 N. Y. 1 ; *Goodrich* v. *Tracy,* 43 Vt. 314 ; *Emerine* v. *O'Brien,* 36 Ohio 491 ; *Lovinger* v. *First Nat. Bank of Madison,* 81 Ind. 354 ; *Ritter et al.* v. *Singmaster et al.,* 73 Penn. st. 400 ; *Hubbard* v. *Hart et al.* 71 Ia. 668 ; *Bell* v. *Buckley,* 11 Exc. 630 ; *Bank of Newbury* v. *Richards,* 35 Vt. 284 ; *Hayward* v. *Billings,* 48 Vt. 355 ; *Blodgett* v. *Bickford,* 30 Vt. 731.

ROWELL, J. The defendant was surety for Walter on a second renewal note to the plaintiff bank. Walter had put $20,000 of securities into the defendant's hands, in consideration of which he agreed to and did indorse for him to that amount, of which said note was a part. The bank knew that the defendant was surety, but did not know that he had security. Said note was taken up by a note that Walter sent to the bank, signed by him and purporting to be signed by the defendant, but on which he had forged the defendant's name. There were several like forged renewals, but the defendant had no knowledge of any of them till the bank notified him of the approaching maturity of the last one and informed him that it would not be renewed; whereupon he went to the bank, saw the note, pronounced his name thereon a forgery, and refused to pay it, and thereupon, at its maturity, this suit was brought thereon and on the three genuine notes and another of the forged renewals.

When the last genuine note was thus taken up, the bank stamped it "Paid," and sent it to Walter, who carried it to the defendant, who, when he saw it, was thereby induced to believe and did believe that it was paid and extinguished and he released therefrom, and thereupon, relying on that belief, he signed another note for Walter for the same amount, which otherwise he would not have done, and whereby he was damnified.

The defendant never had anything to do with the bank concerning any of the notes except as aforesaid, but the business was all done by Walter.

The defendant conceded that the bank believed the forged renewals were genuine, and acted upon that belief in taking them, and otherwise would not have taken them; but he claimed that the cashier was negligent in taking the first forged renewal and stamping and giving up as paid the last genuine renewal, for that the forgery was so manifest that, as a careful and prudent man, with both notes before him, he ought to have detected it; and he asked to go to the jury on that question, claiming that if the negligence was found, the plaintiff would be thereby estopped from recovery on the last genuine note.

The defendant also claimed that by stamping said last mentioned note "Paid" instead of "Renewed," as the fact was, the bank made a false statement, to its knowledge, and that when it sent the note to Walter thus stamped, it ought to have known that he would show it to the defendant, and that the defendant would be thereby induced to believe it was paid and extinguished, and to act accordingly, to his prejudice, or, at least, that it ought to have known that such would naturally and probably be the fact, and that if the jury should find that the bank, in the exercise of the requisite care and prudence, ought to have so known, then what it did in this behalf amounted to a representation by it to the defendant that the note was in fact paid and extinguished; and if it was further found that the defendant acted upon that representation to his prejudice, the plaintiff would be estopped from recovery on that note.

The defendant further claimed, that if the parties are to be regarded as equally innocent in the matter, and the taking of the first forged renewal and the stamping and giving up as paid of the genuine renewal were a mere mistake on

the part of the bank, then the loss must still rest upon the plaintiff, which made the mistake, and on which the chances of business have placed it.

But the court ruled against the defendant on all his claims, and directed a verdict for the plaintiff for the amount of the last genuine renewal, to which the defendant excepted; and he now makes substantially the same claim that he made below.

It was undoubtedly the duty of the bank to act in good faith towards the defendant in the matter, but it was under no further duty to him. *Bank of Newbury* v. *Richards*, 35 Vt. 281, 284. The presentation by Walter of the first forged renewal was a representation by him that it was genuine, and the bank, certainly with nothing to arouse its suspicion, owed the defendant no duty to distrust Walter and to examine the two notes to see whether his representation was true or not. No case is cited nor principle suggested requiring that. A bank is bound to know the signature of its depositor, and, therefore, if it pays a forged check purporting to be his, it must bear the loss. So the acceptor of a bill is bound to pay it although the drawer's name is forged, for the presentation of the bill is a direct appeal to him to accept or to reject it. It is an inquiry as to its genuineness, addressed to the one who, of all others, is supposed to be best able to answer it, and whose answer is most satisfactory. He is, moreover, the person to whom the bill itself points as the legitimate source of information to others, and if he were permitted to dishonor the bill after he has once honored it, the very foundation of confidence in commercial paper would be shaken. But the drawee of a bill is not bound to know the signature of the payee, nor to examine and ascertain whether the indorsement is genuine; and if he pays on a forged indorsement, though to an innocent holder, he can recover the money. *Corn Exchange Bank* v. *Nassau Bank*, 91 N. Y. 74; *Insurance Co.* v. *Bank*, 60

N. H. 442. Nor is a *bona fide* indorsee, whether before or after acceptance, bound to inquire into the genuineness of a bill, in order to retain the money received by him from the drawee in payment thereof. *Price* v. *Neale*, 3 Burr. 1354, a case that has never been departed from. So if a bank receives as genuine, fraudulently altered bills of its own, and passes them to the credit of a depositor who acts in good faith, it is bound by the credit thus given, for it was its duty to know its own bills. *Bank of the United States* v. *Bank of Georgia*, 10 Wheat. 333.

But the case at bar is unlike the case of a drawee who pays or accepts a forged bill, or of a bank that receives as genuine, forged notes purported to be its own, for here the bank was not bound to know the defendant's handwriting, and it was not its duty to examine with reference to ascertaining a thing that it was not bound to know. But by this we do not mean to say that it could shut its eyes that it might not see, or turn away lest otherwise facts might be disclosed at variance with what it represented to exist, for that would be bad faith and a breach of its duty. It follows, therefore, that as here was no duty to examine, there was no negligence in not examining.

Nor was the representation of payment that the bank made, false to its knowledge, as claimed, but true in its belief, in substance and effect, for had the forged note been genuine it would, in law, have paid the other note and extinguished it as affording a cause of action against the defendant; and as knowledge of the falsity of the representation is not imputable to the bank, as it was not in a position that it ought to have known, there can be no estoppel on this score.

The case comes to this, then, that said representation was a mistake on the part of the bank, arising from its nonculpable ignorance of the truth, and brought about by the fraud of Walter; and it would seem that a representation

induced by fraud will not estop.   Big. Estop., 3d ed., 491.

But it is claimed that if a mistake, the case is one that calls for the application of the rule that when a mistake has been made from which one of two innocent parties must suffer, he must suffer who made the mistake, especially when, as here, the chances of business have placed the loss upon him; and *The Gloucester Bank* v. *The Salem Bank,* 17 Mass. 33, is cited in support of this proposition.   That was a case in which the plaintiff had paid to the defendant, notes on which the name of its president had been forged, but which were otherwise genuine, and had neglected for fifteen days to return them; and the court stated the question to be, whether, as between the parties who were equally innocent and ignorant, the loss should remain on the plaintiff, where the chances of business had placed it, or be shifted back upon the defendant, which had, by good fortune, rid itself of it.   It then went on to say, that in all such cases the just and sound principle of decision had been, that if the loss could be traced to the fault or neglect of either party, it should be fixed on him; but that generally, when no fault nor negligence was imputable to either party, the loss had been suffered to remain where the course of business had placed it.   But the first part of that principle is not applicable here, for the loss is not traceable to the fault nor the neglect of the plaintiff.   Nor is the second part any more applicable, for it can hardly be said that the chances of business have placed the loss on the plaintiff, but rather on the defendant; but if it can, the plaintiff, in legal effect, holds the defendant's note, and it has not been paid, and the plaintiff is not estopped from collecting it of him.   In these circumstances, the chances of business can avail the defendant nothing.

*Judgment affirmed.*

TAFT, J., being engaged in county court, did not sit.