CITIZEN'S NATIONAL BANK, v. S. B. WILSON, R. H. WILSON, ED. McCOY, Appellant.

Bills and Notes: RELEASE OF SURETY: BOOK ENTRIES. In a suit against a surety on a note, where the defense is an extension of time of payment by acceptance of new notes of the principal without the knowledge or consent of the surety, entries on the books of the bank holding the notes are competent to show· that the original note was regarded as paid when the new ones were accepted.

Discharge of Surety: ENTRIES IN BANK BOOKS: DIRECTED VERDICT: EVIDENCE. In an action on a note to which a surety enters a defense that he is discharged by reason of ' the acceptance by the bank holding the same of new notes extending the time of payment, and the entries of the transaction in the bank books offered in evidence tend to support this defense, it is error to direct a verdict for the plaintiff based on an explanation of the entries by the bank officials, as the entries constitute competent evidence independent of any explanation, and the issue should be submitted to the jury upon the whole evidence

*Appeal from Marion District Court.*—HON. J. D. GAMBLE, Judge.

FRIDAY, OCTOBER 9, 1903.

ACTION on promissory note. McCoy defended ·on the ground that he was surety only, and that he had been discharged by acceptance of a new note, extending the time of payment without his consent. From judgment on a directed verdict against all the defendants, McCoy alone appeals.—*Reversed.*

*Hayes & Amos* for appellant.

.*Crozier & McCormack* and *S. C. Johnston* for appellee.

McCLAIN, J.—The execution of the note in suit was admitted, and the burden of proving payment or discharge

was assumed by defendant McCoy.    Thereupon evidence
was offered in his behalf tending to show that about
seven months after the maturity of the note, which was
for $1,000, the plaintiff, holding at the same time another
note (which may be referred to as the "Carruthers note")
for $200, on which the Wilsons were liable, received from
the Wilsons $240, and had them execute two notes for $800
and $200, respectively, payable on demand; that on the
note register of the bank an entry was made by its officers
indicating that the note in controversy and the Carruthers
note were paid on the date of the execution of the two
new notes; that the new notes were entered on said
register as paper held by plaintiff in the usual course of
business; that other loans were made by the bank to the
Wilsons; that thereafter one of the Wilsons inquired of
the cashier of plaintiff bank if the note which is now in
suit was settled, and was told by him that it was; that
about six months after the two notes for $800 and $200,
respectively, above referred to, were executed, plaintiff
bank gave to the Wilsons a statement of notes held by the
bank against them, with request for their renewal, and
that in this statement were included a note for $800 and
a note for $200, apparently the notes already above des-
cribed, but no note corresponding to that in suit; that
thereupon a small amount of cash was paid by way of in-
terest, and two new notes were executed by the Wilsons,
one of them being for $1,000, whereupon notes held by the
bank against the Wilsons were surrendered, including the
notes for $800 and $200, respectively, above referred to,
but not including the note in suit; that some time after
the commencement of the present suit this last mentioned
note for $1,000 was surrendered to the Wilsons, and the
note in suit was entered on the note register of the bank
under a new number as a note held by it and remaining
unpaid.

It is difficult to determine from the record whether entries in the books of the bank, tending to show some of the facts above recited, were admitted or excluded. But such entries were certainly competent, rele-vant, and material, and objection to their admission was not well taken. If such entries were excluded, their exclusion was error, which was duly excepted to. If received, they tended to show, by the admissions of the bank's own qualified officers, by whom the entries were proven to have been made, that the note in suit was discharged.

1. BILLS and notes; re-lease of sure-ty; books: entries.

As against the effect of these entries, the court had the testimony of the officers of the bank, called by de-fendants as witnesses to prove the entries and describe the transactions with reference to which they were made, that the note in suit was never surrendered; that when the entry of payment was made on the note register opposite the number and description of such note and the two notes of $800 and $200, respectively, executed by the Wilsons, were received by the bank and entered on its note reg-ister, there was an understanding with the Wilsons that the acceptance of these two notes and $240 in cash as pay-ment of the note in suit and the Carruthers note, with interest accrued on each, was conditioned on the procure-ment of the signature of McCoy as surety on each of the new notes; that the $800 note was pinned to the note now in suit; and that it was not inconsistent with the custom of the bank's officers in transacting its business at that time to enter a record of payment of a note when another note was taken in renewal, even though the new note had not been fully executed, and the old note had not, there-fore, been finally satisfied. On the evidence introduced, if submitted to the jury, a finding would, perhaps, have been proper that the final discharge of the note in suit and McCoy's liability as surety thereon was contingent for six

2. DISCHARGE of surety: entries in bank books: directed ver-dict: evidence.

months on his signing the two notes of $800 and $200, respectively, and for an additional time on his signing the note of $1,000, executed by the Wilsons when these two notes were surrendered to them. But certainly such a finding would not have been the only one which the evidence would justify. In this connection it is proper to say that McCoy was never advised by the officers of the bank that it was desired or expected that he sign any new notes. So far as the record shows, the alleged understanding between the bank and the Wilsons as to obtaining McCoy's signature was not indicated to McCoy by any one, and he remained entirely ignorant of it until long after this suit was brought. The direction of the court in favor of plaintiff must have been predicated on the thought that the defendants were bound by the explanation of these transactions and entries, given by the bank's officers called as witnesses for the defense. But this cannot be true. The officers were necessary witnesses to identify the books in which the entries were found. With proper identification, the entries became independent evidence. It was for the jury to weigh this evidence and the evidence as to the declarations of the cashier to one of the Wilsons that the note in controversy had been settled, and, in the light of the explanation of the officers given, to determine the truth of the matter. *Auburn City National Bank v. Hunsicker*, 72 N. Y. 252; *German Savings Bank v. Bates Addition Improvement Company*, 111 Iowa, 432; *Oxford State Bank v. Holscher*, 115 Iowa, 196. It is to be borne in mind that the question before the trial court, so far as defendant McCoy was concerned, was not whether the Wilsons owed the bank $1,000, but whether a certain specific note on which McCoy was surety had been satisfied, and his liability thereon discharged.

The trial court should not have directed a verdict for plaintiff, and the judgment as against McCoy is REVERSED.