# SUPREME COURT,
## STATE OF KANSAS.

## JANUARY TERM, 1907.

*PRESENT:*

HON. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
HON. ADRIAN L. GREENE,
HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,
HON. CLARK A. SMITH,          } JUSTICES.
HON. SILAS W. PORTER,
HON. CHARLES B. GRAVES,

MARTHA A. HIER, *as Administratrix, etc.,* v. FRED
HARPSTER.

No. 14,928.  (90 Pac. 817.)

### SYLLABUS BY THE COURT.

1. SURETYSHIP—*Duty of a Creditor to a Surety.* Ordinarily a
creditor owes a surety no active diligence. The obligation
to see that the debt is paid, or that the principal performs,
rests upon the surety and not on the creditor.

2. —————— *Release of Surety.* The plaintiff, who held a note
signed by the defendant, as surety, presented it to the prin-
cipal for payment. The principal, who was the cashier of a
bank in which the plaintiff had a deposit, entered a credit in
the plaintiff's pass-book of a sum equal to the amount due
on the note, which was then surrendered and marked "paid."
No money was deposited in the bank by the plaintiff, or by
any one else, as a basis for the entry in the pass-book.
Shortly afterward, the cashier having defaulted and died, a
suit was brought by the receiver of the bank against the
plaintiff, which pended more than three years, and in which
it was held that the note was not paid and that the plaintiff
was liable to the bank for the amount credited in her pass-
book. The surety learned that the note had been surrendered

1—76 KAN.

and canceled but did not know of the circumstances of the surrender or that the matter of payment was in contest. No statement was made by the plaintiff to the surety that the note had been paid, nor did she give him the information that the note had been surrendered and marked "paid." *Held*, that the omission of the plaintiff to give the surety notice of the facts concerning the surrender of the note and of the contest as to its payment did not absolve the surety from liability on the note.

Error from Douglas district court; CHARLES A. SMART, judge. Opinion filed June 8, 1907. Modified.

*W. B. Brownell,* for plaintiff in error.

*B. J. Horton,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to enforce the obligation of a surety. It was brought by Martha A. Hier, as administratrix of the estate of John D. Hier, deceased, against Fred Harpster, as surety on a promissory note given by J. F. Harpster to the deceased on September 22, 1898. J. F. Harpster was the cashier of the Wathena State Bank, with which the plaintiff had an account.

On September 22, 1899, when the plaintiff demanded payment of the interest due on the note, amounting to $80, J. F. Harpster made an entry in the pass-book of the plaintiff and credited her with the amount of the interest due on the note, but made no entry on the books of the bank, nor did the bank ever receive anything of value for the entry made in the plaintiff's pass-book.

On November 30, 1900, payment of the principal and interest then due, amounting to $1083.35, was demanded. J. F. Harpster then entered that amount to the plaintiff's credit in her pass-book, but no money was deposited in the bank to justify such entry in her pass-book, and there was no record made in the books of the bank showing the receipt of any money for such purpose.

When the entry was made in the pass-book of the payment of interest the plaintiff made an indorsement on the note that the interest was paid, and when the second entry was made in the pass-book she indorsed the note as "paid, November 30, 1900," and the note was canceled and surrendered to Harpster. Upon the plaintiff's request for the payment of her balance in the bank, Harpster balanced her pass-book and issued a draft on a St. Joseph bank for the amount shown to be due, which draft was accepted by the plaintiff, believing that the note had actually been paid.

The following January Harpster died. A receiver was appointed for the bank, and upon an examination of the bank the plaintiff was found to have overdrawn her account by the amount of the pretended credits entered in her pass-book. The receiver then brought an action against the plaintiff for the amount of the overdraft, in which it was held that the bank was entitled to recover from her the amount of money paid on the checks drawn on the faith of the unauthorized entries in the pass-book. That judgment was reviewed and affirmed on January 9, 1904. (*Hier v. Miller,* 68 Kan. 258, 75 Pac. 77, 63 L. R. A. 952.) She then paid the judgment, and later, on August 24, 1904, brought this action against Fred Harpster, as surety, to recover the amount of the note and interest. He had signed the note for the accommodation of J. F. Harpster, and had received no part of the proceeds, nor benefit of any kind. He knew nothing of the transactions between the plaintiff and J. F. Harpster, above stated, nor of those between the bank and J. F. Harpster. After the note had been surrendered and marked "canceled," the defendant saw it in J. F. Harpster's desk, soon after the death of J. F. Harpster, and had every reason to believe, and did believe, that the note had been paid. He had no notice or knowledge of any kind whatsoever from the plaintiff that the note had not been paid, and no demand was ever made of him on account thereof until this action was brought.

Upon J. F. Harpster's death an administratrix was appointed, who settled in full all claims presented against the estate, except that of the Wathena State Bank, but this claim was never presented by plaintiff against the estate. The trial court held that the conduct of the plaintiff in failing to notify the surety that the note was not paid until the commencement of the action constituted such negligence as would release the defendant from the payment of the obligation to the extent of the injury occasioned by such negligence. Upon an examination of the accounts of J. F. Harpster's estate the court found that a certain amount might have been recovered from the estate had a claim been entered against it within a reasonable time by the plaintiff, and gave judgment against the defendant for the difference between that amount and that which was due on the note. Both parties complain of the judgment.

Did the conduct of the plaintiff operate to release the surety from the obligation which he assumed? It will be conceded that the mere surrender and cancelation of the note did not extinguish the debt nor release the surety. It is claimed that plaintiff's subsequent conduct or failure to give the surety notice had the effect of releasing him. There was no misrepresentation nor fraudulent concealment of the facts by the plaintiff. Did her inaction, or her failure to notify the surety in regard to the surrender of the note, relieve him from responsibility? Ordinarily the creditor owes the surety no active diligence, and therefore the mere delay or inaction of the creditor affords no ground for the release of the surety. The general rule is that the obligation to see that the debt is paid rests on the surety and not on the creditor, and so it has been held that "however much the forbearance of the creditor toward the principal debtor may prejudice the surety, it will not discharge him from liability." (*Ray v. Brenner*, 12 Kan. 105, syllabus; *Halderman v. Woodward, Assignee, &c.*, 22 Kan. 734.) An il-

lustration of this rule is found in *Goodacre v. Skinner,* 47 Kan. 575, 28 Pac. 705, where it was held that the delay of a creditor in enforcing a mortgage given as security for a note was no defense in an action against the surety on the note, and that if the principal was removing or disposing of property, and thus rendering himself unable to pay the note, it was the duty of the surety and not of the creditor to invoke the aid of the law. (See, also, *Ingels v. Sutliff,* 36 Kan. 444, 13 Pac. 828.) In *Barnes v. Mowry,* 129 Ind. 568, 28 N. E. 535, it was held that "a creditor does not lose his right to hold the surety by inaction or passiveness, except in cases where the surety has taken such steps as compel the creditor to proceed or lose his claim." (Syllabus.)

Any active interference of the creditor, such as the making of an agreement with the principal to extend the time of payment or which operates to increase the risk of the surety and deprives him of the opportunity to protect himself, may effect a discharge. And generally, if the creditor informs the surety that the secured debt has been paid, when in fact it has not, and as a result the surety is injured, he will be discharged, although the creditor may be honestly mistaken in the statement made by him. (*Bank v. Haskell,* 51 N. H. 116, 12 Am. Rep. 68; *High v. Cox,* 55 Ga. 662; *Thornburgh v. Madren,* 33 Iowa, 380; Brandt, Sur. & Guar. §§ 211, 212.)

Here there was no active interference by the creditor, nor did she make any statement to the surety in regard to the payment of the debt or the surrender of the note. It is true that shortly after the transaction in the bank the surety saw the surrendered note marked "paid," and from that time rested in the belief that it had been paid, but this information was not given to him by the plaintiff, nor did she make any misleading statements concerning the transaction. The surrender of the note was accomplished by the fraud of the principal, but there was no fraud or bad faith on the part of the plaintiff in making the sur-

render. In the absence of fraud or gross negligence the surrender of the note, when brought to the knowledge of the surety, might have been treated as the equivalent of a declaration by the plaintiff that the note had been paid or satisfied in some way; but the plaintiff accepted the entries which the principal made in her pass-book as payment in the belief that payment had been made, or, rather, that the principal had or would in some way provide the necessary funds to justify the entries. When the fraud of the principal became known to her and an action was brought by the receiver of the bank she did not insist on payment by the surety, but at her own expense defended, on the theory that if any one was to lose it should be the bank, which left its funds in the hands of the dishonest principal, who undertook to use them for the payment of his own debt. Until the end of that litigation she was not aware of her mistake, and evidently thought that whatever the relations were between the cashier, who was her principal debtor, and the bank, the note had actually been paid. If the surety, whose duty it was to see that the principal met his obligation, had inquired he would have learned the facts about the surrender of the note and would have been as well informed as the plaintiff that the debt had not been extinguished.

In *Bank v. Fletcher,* 68 Vt. 81, 34 Atl. 38, where a creditor had taken a renewal note with a forged indorsement, and surrendered the original, on which there was a genuine indorsement, and the indorser, when sued upon the original, insisted that the fraud had been accomplished through the mistake of the creditor and invoked the rule that where one of two innocent parties must suffer the one making the mistake should bear the loss, the court held that there was no such negligence on the part of the creditor as would release the indorser, and that the misrepresentation, made through mistake and fraud, did not create an estoppel.

In Iowa a note signed by a surety was renewed by the maker's giving another note, to which he forged the name of the surety.. When the original note was given the maker gave the surety a mortgage upon property as an indemnity. One holding a second mortgage on the same property inquired of the surety whether the note had been paid, and was referred by him to the payee, who said that the first mortgage was no longer a lien. Neither the payee nor the surety then knew of the forgery, and in an action against the surety the court held that the payee of the first note was not estopped from enforcing it against the surety. (*Hubbard v. Hart et al.,* 71 Iowa, 668, 33 N. W. 233.)

In another case the creditor obtained security for a debt by attaching property of the principal debtor, and this fact was communicated to the surety. Afterward the creditor dismissed the suit and released the property. The surety claimed that he was lulled into a feeling of security by the statement of the creditor, and therefore should be released, but the court held that, as the creditor had not agreed to rely solely on the attachment, the surety was not discharged. (*Barney v. Clark,* 46 N. H. 514. See, also, *Debenture Co. v. Hopkins,* 63 Kan. 678, 66 Pac. 1015; *Bangs v. Strong,* 10 Paige [N. Y.], 11; 11 A. & E. Encycl. of L. 434.)

The opinion of the court, therefore, is that the surety is not relieved from responsibility, but in this view the writer is unable to concur. In his opinion the omission of the plaintiff to give any notice to the surety of the facts connected with the surrender of the note and of her subsequent controversy as to whether it had in fact been paid, running over a period of more than three years, was such negligence as relieved the surety, at least to the extent of the injury sustained by the lack of such notice. It is true that the plaintiff did not tell him that the note had been paid, but by her negotiations the note was surrendered

and marked "paid," and this fact was communicated to the surety. While she did not act in bad faith, she knew, or should have known, that the cashier had no right to take the funds of the bank to pay his individual debts. As was remarked by Mr. Justice Burch, in *Hier v. Miller,* 68 Kan. 258, 75 Pac. 77, 63 L. R. A. 952, "when the cashier made an entry in the defendant's pass-book of the receipt of money by the bank she knew the recital was false." (Page 269.) The surety, who lived in a distant county, did not know these facts. He knew that the plaintiff had surrendered the note as paid, but had learned nothing of the circumstances of the payment. In the agreed facts it is stated that he not only believed that the note had been paid but that he had every reason to believe that it had been paid. Within a few weeks after the cancelation of the note the payment was challenged and suit was brought against the plaintiff, but she never informed the surety that a contest was on which might affect his liability. During the three years that the matter was in litigation he might have taken some steps for his protection, if he had known the facts of the surrender or that payment was contested.

The surety is a favorite debtor. The law requires the creditor to deal candidly and fairly with him. Facts within the knowledge of the creditor affecting the surety should be disclosed, and the withholding of them may be a legal fraud on the surety. The surrender of the note by the plaintiff, under the circumstances, was the equivalent of a declaration by her to the surety that the note had been paid. In my judgment the conduct and negligence of the plaintiff absolved the surety from liability. Some of the authorities sustaining this view are: *Kirby v. Landis,* 54 Iowa, 150, 6 N. W. 173; *Rowley v. Jewett,* 56 Iowa, 492, 9 N. W. 353; *Harris v. Brooks,* 38 Mass. 195, 32 Am. Dec. 254; *Struss v. Masonic Savings Bank,* 89 Ky. 61, 11 S. W. 769, 12 S. W. 266; *Poling v. Maddox,* 41

W. Va. 779, 24 S. E. 999; *Gordon v. M'Carty*, 3 Whart. (Pa.) *407.

As a majority of the court are of the opinion that the surety was not released, it follows that there must be a modification of the judgment. The cause will therefore be remanded, with directions to enter judgment on the agreed facts for the plaintiff for the amount of the note and accrued interest.

GREENE, MASON, SMITH, PORTER, GRAVES, JJ., concurring.

JOHNSTON, C. J., dissenting.

BURCH, J. (dissenting) : I dissent from the opinion of the majority of the court, and concur in the views of the Chief Justice.