REINTS & DEBUHR, Appellant, v. JOHN UHLENHOPP, Appellee.

**Bills and notes:** FORGED SIGNATURE: EFFECT.  Where the signature to a note is found upon conflicting evidence to have been a forgery, the verdict will not be disturbed on appeal.  And the party whose signature was forged is not liable on the note, where he denies the same and liability thereunder when called upon for payment.

**Same:** PRINCIPAL AND SURETY: RELEASE OF SURETY.  A surety is not justified in relying upon the mere statement of his principal that he has paid or satisfied the obligation; but where the payee surrenders a note signed by the principal and a surety to the principal, marked by him as paid, in consideration of a new note on which the surety's name is forged, as in this case, the surrender of the original note is the equivalent of a declaration that it has been paid and satisfied.  And if the fact of its surrender comes to the knowledge of the surety and in reliance thereon he is lulled into security, and the principal becomes insolvent before demand is made on the surety for payment of the original note, then the same can not be enforced against the surety, even though the principal did not exhibit the surrendered note to the surety, but simply told him that it was paid and satisfied.

**Same:** APPEAL: CHANGE OF THEORY.  Where, as in this case, it was assumed during the trial that defendant was merely a surety on the original note and that his signature to the renewal note was a forgery, the payee could not urge on appeal that the surety was a principal on the original note.

**Bills and notes:** ELECTION OF REMEDY: RELEASE OF SURETY.  The original note in question was executed by the principal and two sureties and was surrendered to the principal in consideration of a renewal note, to which the signature of one of the sureties was forged, and after knowledge of the forgery the payee sought to rely on the renewal note and enforce it against the surety who signed it.  *Held,* that having elected to rely on the renewal note he could not thereafter recover on the original note against the other surety.

*Appeal from Butler District Court.*—HON. J. J. CLARK, Judge.

FRIDAY, NOVEMBER 18, 1910.

THE action was originally brought upon a promissory note for $11,000, upon which it was claimed defendant, with one H. Sherman, were sureties for J. F. Schuirmann, principal. Defendant pleaded that his signature to the note was a forgery, and was affixed without his knowledge, or authority. Plaintiff thereupon filed a second count to its petition, wherein it was alleged that the $11,000 note was given in renewal of a prior note for $10,000 signed by defendant and Henry Sherman as sureties for J. F. Schuirmann as principal. The name of J. J. Uhlenhopp also appears upon this note, but whether as principal or surety is a matter of some doubt. Plaintiff asks that, if defendant's signature to the $11,000 note be found to be a forgery, it have judgment for the amount due on the $10,000 note. Defendant, still relying upon his defense of forgery, pleaded in answer to the second count that the $10,000 note had been settled, discharged, and returned to the principal. He also pleaded that, after knowledge on plaintiff's part of the forgery of defendant's name, plaintiff elected to rely upon the $11,000 note by enforcing or attempting to enforce the same against the other surety on the note, thus confirming the same, and thereby waiving any right it had on the original $10,000 note. He also pleaded that plaintiff surrendered the original $10,000 note to the principal thereof as paid and satisfied; that he was informed of such surrender and induced to believe that the note was paid, taking no steps to secure himself or to enforce collection thereof from the principal as he might have done had he not believed that note was paid; and that he was not informed that the original note was in fact unpaid until the principal, Schuirmann, had be-

come insolvent.   He further averred that by plaintiff's
conduct he was lulled into a sense of security, and took
no steps to protect himself as he might have done had he
been advised of the true situation.   He alleged that, when
the original note was surrendered, Schuirmann was solvent,
and abundantly able to pay the same, but that, when in-
formed by plaintiff that the note had not been paid save
by the delivery of the forged renewal note, Schuirmann was
insolvent and unable to pay anything.   Defendant also
averred that without his knowledge or consent the time of
payment of the $10,000 note was extended, and that thereby
he was released.   In reply plaintiff denied most of the
allegations of the answer, and upon these issues with some
others not necessary to be mentioned the case was tried
to a jury, resulting in a verdict and judgment for defend-
ant.   Plaintiff appeals.—*Affirmed.*

*D. Voogd, W. T. Evans,* and *Courtright & Arbuckle,*
for appellant.

*F. J. McGreevy* and *E. P. Andrews,* for appellee.

DEEMER, C. J.—Under the name of the German Land
Company, J. F. Schuirmann, J. J. Uhlenhopp, and J. D.
Miller were engaged in the land business in Iowa, Min-
nesota, and other states, and the parties named also had
some individual business which each was conducting inde-
pendent of the partnership.   On January 2, 1903, plain-
tiffs were engaged in the banking business under the name
of the Exchange Bank, and as such they loaned to Schuir-
mann and J. J. Uhlenhopp or to Schuirmann the sum
of $10,000, taking a note signed by both Schuirmann and
Uhlenhopp and by Henry Sherman and defendant John
Uhlenhopp, as sureties.   There is some dispute as to
whether J. J. Uhlenhopp was a principal or a surety upon
this note.   Of this we shall have something more to say

before closing the opinion.  The note bore 8 percent interest and was due one year after date.  When the note matured, the principals, or Schuirmann, was unable to pay the same, and they applied to the ·payee for an extension.  This was agreed to provided Schuirmann would secure a renewal note signed by Henry Sherman and defendant as sureties.  This he, Schuirmann, undertook to do, and about January 10, 1904, he presented to plaintiff a demand note for $11,000, dated December 31, 1903, purporting to be signed by himself, H. Sherman, and defendant, John Uhlenhopp.  Plaintiffs accepted this note, marked the $10,000 note paid, and delivered the same in its canceled condition to J. F. Schuirmann.  Schuirmann kept the $10,000 note for some time, and then burned it up.  About the time of the surrender of the $10,000 note Schuirmann informed defendant that the same had been paid, and that he Schuirmann then had the same.  Defendant heard nothing further from either note until shortly before the bringing of the suit on the $11,000 note, which was August 27, 1908, something like four years after it was executed.  When called upon for payment, he denied that he had signed any such note, and denied any liability thereunder.  Shortly thereafter plaintiffs went to Henry Sherman, who was in fact a surety on the $11,000 note, and, pursuant to demand made upon him, received two mortgages for $4,000 each and a note for $1,000 either in settlement or as collateral security for his half of the $11,000 note.  There was testimony tending to show that, when the original $10,000 note became due and for some time thereafter, Schuirmann had ample property with which to pay the note, but that before suit was commenced against defendant on the $10,000 note, and before any demand was made upon him for the payment of the $11,000 note, Schuirmann had become insolvent, and was unable to pay any part of the same.  The issues have already been stated, and also the result of the trial.  For a reversal plaintiff relies

upon several propositions, and to such as are regarded of sufficient importance to justify notice we shall now refer.

I.   First.   It is insisted that the testimony was not sufficient to justify a finding that defendant's signature to the $11,000 note was not made by him or by his authority, but was in fact a forgery.   The evidence upon this proposition is conflicting, and it was a fair question for the jury to determine under proper instructions.   Having found that the signature was a forgery, defendant can not, of course, be made liable on the $11,000 note.   Code Supp. 1907, section 3060-a23.

*1. BILLS AND NOTES: forged signature: effect.*

II.   Having been induced to part with the $10,000 note on the strength of the genuineness of all the signatures to the $11,000 renewal note, plaintiff may still enforce the $10,000 note, unless it be for some of the defenses interposed by the defendant.   These two defenses and the effect of the testimony relating thereto are so clearly presented by the trial court's instructions to the jury that we here quote therefrom as follows:

*2: SAME: principal and surety: release of surety.*

(1)   In order to make good the defense set up in the fifth count of his answer, the defendant must prove by a preponderance of the evidence that he received knowledge of the surrender and delivery of the $11,000 note as explained in the sixth instruction above as paid; that he believed the same was actually paid and satisfied, and plaintiff had so declared in some manner by its action in surrendering it to the maker as paid and satisfied; that he relied upon such facts and was misled thereby and lulled into security, so that he took no thought or action for his own protection or to indemnify himself against said maker J. F. Schuirmann; that said Schuirmann was in such solvent condition that he could by commencing action at law or otherwise have prevented loss to himself, and that he would have done so had he not been so misled and lulled into security by reliance upon the knowledge he

thus gained of the surrender and satisfaction of said note; that since said surrender and delivery of said $10,000 note the said J. F. Schuirmann has become in an insolvent condition, so that defendant could not thus take steps to protect himself from loss, and that he has remained in such insolvent condition. If he has so proved all such facts, your verdict must be for the defendant, otherwise his defense must fail as to this count.

(15) Ordinarily a creditor owes a surety no act of diligence. The obligation to see that the debt is paid or that the principal maker pays the note rests upon the surety, and not upon the payee or owner of the note. So in this case it was the duty of the defendant to see that the said $10,000 note was paid, and not a duty resting upon the plaintiff, and the mere fact that the plaintiff was lenient with the principal maker, or, if it remained inactive and took no steps to collect it, these facts would not release the defendant. Nor, would the surrender of said note to the principal, J. F. Schuirmann, as paid upon the execution and delivery of the $11,000 note to plaintiff operate as a release or discharge of the defendant from the liability on the $10,000 note, if such surrender thereof was procured by fraud and forgery unknown to the plaintiff? To operate as a release of the defendant by such facts, knowledge thereof must have been conveyed to him in such a way and time as to mislead him and cause him to change the position he would otherwise have taken to his detriment, or to quiet him into a feeling of security, and prevent him from taking action against the maker in time to prevent loss to himself.

(16) In order to make good the defense set out in the seventh count of his answer, explained in the seventh instruction herein, the facts essential to be proved by the defendant by a preponderance of the evidence are: That after the plaintiff knew as a fact or believed after learning that defendant claimed that he did not sign the $11,000 note, that his signature thereto was not genuine, that thereafter it voluntarily and knowingly retained the same in the condition it was then left, and treated and considered it still as a payment and complete satisfaction of the $10,000 note. If the defendant has so proved such facts, your verdict must be for the defendant; otherwise he must

fail in this defense. The mere fact that the defendant denied his signature or claimed to plaintiff that he did not sign the note, or that plaintiff began this suit on the $11,000 note, would not be sufficient to establish this defense, as the plaintiff would not be compelled to take defendant's word alone as establishing the truth, unless it believed it to be true, and it would have a right to sue any or all of the makers or sureties together or separately, and to test the question of the genuineness of the defendant's signature by action at law on the $11,000 note without waiving any right it might have upon the $10,000 note against any of the makers or sureties thereon. If the defendant fails to establish as aforesaid either of his affirmative defenses as above explained, your verdict must be for the plaintiff on the second count, unless you find for the plaintiff on the first count. You can not find for the plaintiff in any case on more than one count of the petition.

These instructions are challenged for various reasons. It is argued that considered abstractly they are wrong, and that concretely they are inapplicable to the facts as disclosed upon the trial. The first proposition we shall consider is the effect of the delivery of the $10,000 note as canceled and paid and Schuirmann's declaration to defendant that he had paid the note and had it in his possession. Of course, a surety is not justified in relying upon a mere statement from his principal that he has paid a note or satisfied his obligation. This is so fundamental as scarcely to need fortification by citation of authority, but see *Hubbard v. Hart,* 71 Iowa, 688; *Dwinnell v. McKibben,* 93 Iowa, 331; *Humboldt Bank v. Rossing,* 95 Iowa, 1; *Sullivan v. Cluggage,* 21 Ind. App. 667 (52 N. E. 110); *Hier v. Harpster,* 76 Kan. 1 (90 Pac. 817, 13 L. R. A. [N. S.] 204) and cases cited in note. But it is the rule of this court that, if a payee surrenders a note signed by a principal and a surety to the principal in consideration of a note on which the surety's name is forged, the surrender of the original note is the equivalent of a declaration that it has been paid and satisfied, and, if

the fact of such surrender comes to the knowledge of the surety and in reliance thereon he is lulled into security and the principal becomes insolvent before demand is made on the surety for payment of the original note, the said note can not be enforced against the surety. *Kirby v. Landis,* 54 Iowa, 150. We quote the following from that case:

If the plaintiff had told them (the sureties) that the note had been paid, they would certainly have been justified, in the absence of all knowledge to the contrary, in assuming the plaintiff's statement to be true, and in governing themselves accordingly. . . . The surrender of the note was equivalent to a declaration that it had been paid or satisfied in some way, and, if the fact of the surrender came to the knowledge of the sureties, it was equivalent to a declaration made to them that the note had been paid or satisfied in some way. We think, therefore, that under the averments of their answer they must be deemed to have been prejudiced. It is true they might not in fact have protected themselves if the note had not been surrendered. But it was not incumbent upon them to aver what they would have done. It was sufficient to aver that they might have protected themselves but for the surrender, and lost the opportunity of doing so by reason thereof.

The rule has since been followed in *Hubbard v. Hart,* 71 Iowa, 669, and *Dwinnell v. McKibben,* 93 Iowa, 331, and the same principle has been announced in *Thornburg v. Madden,* 33 Iowa, 380; *Auchampaugh v. Schmidt,* 80 Iowa, 186; *Wolf v. Madden,* 82 Iowa, 114, and *Marshall Field & Sons v. Sutherland,* 136 Iowa, 218. Courts are not in harmony with respect to the correctness of the rule; but it has been so long established in this state and so many times repeated that we do not feel like departing from it at this time.

Appellant's counsel seek to take the case out of the rule for the reason that the original note was never shown to defendant in its canceled condition and that all he had to rely

upon was the bare statement of the principal on the note. But this is not the exact situation. The note was surrendered to the principal, and was marked "Paid" upon the face of it. This was a declaration by the creditor that it was paid and an authorization to the principal to so state to the surety. When the principal stated the fact to his surety, it was the equivalent of showing him the note, and the surety had the right to rely upon a statement which the creditor in effect authorized the principal to make. Of course, had the note not been surrendered, the principal could not bind the creditor by an untruthful statement. But it was surrendered as paid, and the principal had the right to make this statement to his sureties just as he would have had the right to have shown the note to him. The distinction attempted to be preserved is not regarded as material or controlling.

III. It is said that there was an issue as to whether or not J. J. Uhlenhopp was a surety or a principal upon the $10,000 note; that, if he was a principal, defendant has not shown that he is insolvent; and that, as he has shown no prejudice, a defense to the original $10,000 note is not made out.

3. SAME: appeal: change of theory.

It is true that in the pleadings plaintiff alleged that this party was a principal upon the note, and that this allegation was denied by defendant. But the relationship of J. J. Uhlenhopp to the note was no part of the defense interposed by the defendant. It is true that plaintiff finally showed that J. J. Uhlenhopp was a principal, but they placed no reliance upon that fact, and neither party bottomed any claim or defense upon the fact that J. J. Uhlenhopp was upon the note either as principal or as surety. This whole matter seems to be an afterthought. The case was not tried upon the theory that J. J. Uhlenhopp's relation to the note was in any way material. Moreover, plaintiff asked an instruction to the effect that J. J. Uhlenhopp was a surety on the note, and the testimony is prac-

tically all one way upon that proposition.   In so far as
the vital issues presented by the pleadings were concerned,
the nature and extent of J. J. Uhlenhopp's liability on
the original note was in no manner involved.   He did not
sign the $11,000 note, and his liability thereon is, of
course, not claimed or asserted.   It may be that under
proper issues the question of his responsibility might be-
come material.   But it was not considered important by
the parties in their pleadings, and it was assumed during
the trial that he was a surety only on the $10,000 note.

IV.   The question of the release and discharge of
Henry Sherman upon the notes was taken from the jury
in so far as it was pleaded as a complete defense; but the
dealings between the creditor and this surety
after knowledge of defendant's claim that
his name to the $11,000 note was a forgery
were submitted to the jury by the instruc-
tions already quoted.   These instructions are challenged,
but we think they announce correct rules of law.   Plain-
tiff's conduct with reference to the second, the $11,000
note, was such as to justify a jury in finding that it had
elected to pursue whatever remedy it might have thereon
against the surety who actually signed the same, thus of
necessity abandoning its claim on the first $10,000.   At
least a jury was authorized to so find under the testimony
adduced.   *Citizens' Bank v. Wilson,* 121 Iowa, 156; *Keene
Bank v. Archer,* 109 Iowa, 419.   Plaintiff could not enforce
both notes, and, if after knowledge of all the facts it con-
cluded to rely upon the one for $11,000, it is bound by
its election.

4. BILLS AND
NOTES: election
of remedy:
release of
surety.

V.   It is said that there should have been a verdict
for the plaintiff under the fourteenth instruction, but this
is manifestly incorrect.   Again, it is said there was no
warrant in the testimony for the giving of the sixteenth
instruction, but this too is without merit.

VI.   Some complaint is made of the conduct of the

bailiff and of the jury; but the trial court was perfectly justified in finding that no prejudicial misconduct occurred.

We have examined the entire record with care, and find no prejudicial error. The judgment is therefore *affirmed.*