No. 30,760.

WILLIAM ZAVESKY, a Minor, by J. R. GWINNER, His Guardian, *Appellee,* v. MARYLAND CASUALTY COMPANY, *Appellant.*

(16 P. 2d 504.)

Opinion filed December 10, 1932.

*Spencer F. Harris* and *Paul G. Koontz,* both of Kansas City, Mo., for the appellant.

*V. E. Danner,* of Ellsworth, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the guardian of William Zavesky, a minor, to recover from The Maryland Casualty Company, a surety, upon the guardian's bond, given by Rose Zavesky, who had been duly appointed the guardian of five minor children, one of whom was the plaintiff, William Zavesky. The plaintiff claimed that the guardian had received $1,000 belonging to the minor, William Zavesky, for which she had not accounted. The case was submitted to the court upon agreed facts supplemented by a little evidence, and the judgment of the court was that plaintiff was entitled to recover from the defendant $1,000, with interest at six per cent from January 3, 1923. Defendant appeals.

John Zavesky died March 12, 1921, leaving as his heirs Rose Zavesky, his widow, and five children, including the plaintiff, William Zavesky, all minors. His estate consisted of personal property, $3,827.70, and three hundred and twenty acres of land, originally appraised at $24,000. The costs of the administration of the estate consumed the personal property, and after the debts were paid nothing of the proceeds remained except the sum of $77.66, which was received by Rose Zavesky. She also received $577.66, the result of wheat and rent obtained from the land. Out of this she had paid taxes and debts, $442.77. Rose Zavesky brought an action for partition on October 10, 1922, alleging she was the owner of a half interest in the three hundred and twenty acres. In that suit

the children were made defendants, and they were represented by a guardian *ad litem*. The action resulted in an order of partition of the land, if it could be done in kind, but if not that it should be sold, and commissioners appointed reported that the property could not be partitioned in kind. The court made an order confirming the report of the commissioners, that it could not be partitioned in kind, and also that parties should have twenty days within which to elect to exercise their right to take the property at the appraised value, the appraised value being $11,000. Rose Zavesky elected to take the property, including the interest of the five children, at its appraised value. A judgment was entered following the election, and the court ordered an approval of her election and that the money be paid into court and a deed executed to her. She was given a receipt for the $5,000 belonging to the minor children represented by her. A deed was executed in due form to her. It is agreed that in the latter part of 1922 and before January 5, 1923, Rose Zavesky, on her own petition was appointed guardian of the children and gave a bond for the performance of her duties as guardian in the sum of $7,500. On February 9, 1924, she filed an account in the probate court as guardian, and among the items she charged herself as having received $5,000. On April 17, 1926, the original surety upon her guardian's bond, which was signed by Anna Greenough, asked for a release and was granted the same, and on June 1, 1926, the Maryland Casualty Company became surety in the sum of $5,000. As guardian, Rose Zavesky made a report on February 9, 1924, and acknowledged the receipt of $5,000; on the 22d day of November, 1928, she reported again that she had on hand belonging to the estate the sum of $5,000; and on December 21, 1926, she acknowledged the sum of $4,296.84. After the money was ordered paid into court and that it should be distributed, the evidence of the clerk of the court was that no money was in fact paid into court by her, that the clerk of the court to protect himself accepted the receipt of Rose Zavesky as the representative of the minors, but that no actual money was ever passed, and defendant contends that a surety upon a guardian's bond cannot be made liable for money which never came into her hands. It is said the matter involved here was between herself as an individual and herself as the guardian, and as a matter of fact the guardian had nothing to account for or for which she should be charged or for which the surety should respond. It is contended that a surety

cannot be held for the replacement of funds where there was nothing received.

There is little room for controversy as to the validity of the judgment rendered by the district court. The judgment in the partition action is not now open to question. It was adjudged that the partition of the land be made in kind if it was possible. That was found to be impossible, and hence a sale of the land became necessary. Parties were given the right of election to take the land at its appraised value. Rose Zavesky elected to take the property and this election was confirmed by the district court, and at the same time an order was made to pay the money into court. As she, the purchaser, owned one-half of the proceeds, it was not necessary to go through the form of paying the money to the clerk and immediately drawing it out again. She was also acting in behalf of the minors and it was likewise unnecessary to pay the money from her individual pocket and put it back into the pocket in which she kept the funds of the minors. It is not an uncommon practice at judicial sales to allow the purchaser to whom the proceeds of the sale are to go, to accept the adjudged obligation in his favor as payment of the purchase price to the extent to which it will go without transferring the funds forward and back. It is conceded that the $5,000 due to the minors has not been paid to any of them. She has given bond as guardian to secure faithful performance, the last of which was executed by defendant while the guardian was still holding the money due to the minors. The bond of the defendant bound it to the extent of $5,000 and the condition of the obligation was, "That if the said Rose Zavesky, guardian of the persons and estates of Charles Zavesky, William Zavesky and Stephen Zavesky, minors, shall faithfully discharge all the duties and obligations imposed upon her by law, as such guardian under her letters of guardianship, then the above bond shall be void, otherwise to remain in full force."

The guardian, as we have seen, had made verified reports and filed them in the probate court acknowledging that she held the money due to the plaintiff as well as that belonging to other minors. There were five of these acknowledgments officially made as guardian. They were filed in a court of record and judicial action was taken on them. The receipt of the money through the partition proceedings was acknowledged, and that she still held the money derived from her purchase of the land. It is plausibly contended by plaintiff that the official acknowledgments made a matter of judicial

record cannot be disputed by the guardian and is equally conclusive against the surety. It is insisted that she should not be permitted to deny that she had received the money in her fiduciary capacity and there is no contention that any portion of it has been paid. It has been said that:

"The doctrine of estoppel plays an important part in the relationship of guardian and ward, serving to protect each of them against the other. The guardian cannot contest the title of his ward to property coming into his hands as guardian, nor recognize the title of a third person, however complete it may be, to property awarded to his ward by a decree obtained at his instance, nor deny that the property of the ward which came into his hands before final settlement was received by him as guardian. He will be estopped also from contesting the validity of previous settlements and the amounts charged against himself," etc. (28 C. J. 1160.)

*Newberry v. Wilkinson*, 199 Fed. 673, has features much like those of the present case. A woman who had considerable property died intestate leaving her husband, a son and a daughter, as her heirs. The husband procured the appointment of a guardian for the children, who gave the required bond for faithful performance. The father of the children then brought a partition suit in which it was found impossible to divide the property in kind, and an order was made to sell the estate for cash, and a sale was made at a price of $66,800 to a purchaser to whom a deed was executed, and who, at once and without consideration, deeded the property to the father. No money was passed at the sale from the purchaser to the guardian or to the father. The guardian and the father each gave his receipt acknowledging payment by the purchaser to the guardian and Newberry, the father, of the sum of $33,400. The proceeding, it appears, was a scheme by the father to get the title to the property in his own name and thus enable him to mortgage it for additional money. It was contended that no money was passed and therefore there was no liability on the guardian's bond. In deciding the case the court remarked:

"Whatever good intentions may have prompted Newberry in disposing of his children's inheritance, the disposition made was a manifest constructive fraud upon their rights, and it is bootless to speculate as to the probability or possibility of the property being lost to the estate in any event by reason of prior encumbrance or financial entanglement. Van Houten (the guardian) became a party to the fraud by lending himself to become guardian of the minor heirs, and by receipting in his official capacity for money which he never actually received, purporting to be the proceeds of the sale at partition of their inheritance. The device enabled Newberry, the father, to possess himself of

the inheritance, and afterwards to use it for his own purpose, so that it was lost to the heirs. Being a party to such device, Van Houten by the plainest principles of estoppel by record and *in pais,* was ever afterwards precluded from denying that he received the money. Neither can his sureties be heard to say that he never received it." (Citing many cases, p. 680. See, also, *Westmoreland v. Birmingham Trust and Savings Bank,* 214 Ala. 593.)

While Rose Zavesky did not handle the cash for the transfer of the land to her, she did present and cause to be filed in the court an admission that it had been received and charged herself with the amount which she owed the minors, including the plaintiff. The defense of the surety that the cash did not come into her hands when the transfer of land was made to her is deemed to be without merit. She had acquired and held the land in which the minors had a share of $5,000, the equivalent of money which she received and charged to herself. The record she caused to be made under the circumstances is binding upon her. She is not in a position to deny the receipt of the money or the source from which it was derived. The surety is likewise concluded, as he is only entitled to make such defenses on this feature of the case as were available to the principal. Even if her reports to the probate court could not be regarded as an estoppel by record, the facts in the case clearly show unfaithful performance of her duty as guardian. She procured and held the funds of the minors when the defendant became surety for her. It was the duty of the surety to see that the guardian performed her duty towards the minors. It is a general rule that it is the obligation of a surety to see that a debt secured, or other duty for which the guaranty is given, be paid or performed. (*Hier v. Harpster,* 76 Kan. 1, 4, 90 Pac. 817.) The obligation rested upon the defendant to see that the guardian collected the money from herself and that she accounted to plaintiff for the $1,000 of his money which she was still holding as guardian. A number of authorities are cited by defendant which have been examined and which we think are not applicable to the situation we have here.

The judgment of the district court is affirmed.

The separate appeals by Stephen Zavesky (No. 30,761) and Charles Zavesky (No. 30,762) involve the questions determined in this appeal, and under stipulation and agreement of the parties that the decision herein shall be decisive of those appeals, they are likewise affirmed.