No. 34,590

N. J. WARD, Administrator with the Will Annexed of the Estate of
Anna Kozak, Deceased, *Appellant*, v. JOSEPH KRHOUNEK and
FRANK STERBA, *Appellees*.

(99 P. 2d 800)

Opinion filed
March 9, 1940.

*N. J. Ward*, of Belleville, for the appellant.

*W. D. Vance, Fred Emery* and *P. L. Owsley*, all of Belleville, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to recover on an executor's
bond. Defendants demurred to plaintiff's petition, challenging the
court's jurisdiction, and invoking the principle of *res judicata* and
the statute of limitations. This demurrer was sustained.

The material facts developed by the pleadings with exhibits at-
tached were these: On May 13, 1930, John Dolezal of Republic
county died testate. Two paragraphs of his will read:

"Fourth: In case my step-daughter, Anna Kozak, commonly known and
called Anna Dolezal, shall survive me, then and in that case, I give, bequeath
and devise all the rest, residue and remainder of my property and effects to
Victor Veroda as trustee for said Anna Kozak, he to receive, hold, handle,
manage and control the same for her and her benefit during her lifetime, and
whatever remains in his hands at her death to be and constitute a part of her
estate. *Said Victor Veroda, trustee, shall have and is hereby given full and
complete power and authority to handle, manage, control, collect in, invest and
re-invest, sell, dispose of, and convey all property and effects coming to his
hands hereunder in such manner, upon such terms and conditions as in his
judgment shall be proper and the best interests of said Anna Kozak.* (Italics
ours.)

"Said trustee shall have power and it is made his duty to use the property and effects coming to his hands as such trustee for the care, support and proper maintenance of said Anna Kozak, he being given power hereby to employ such person or persons as he deems proper for such purpose and to pay such sum or sums for services so rendered as in his judgment are fair and proper, and to provide and pay for all other necessities and comforts of life for said Anna Kozak within the limits of the means and property coming to his hands under this will.

"Sixth: I hereby nominate and appoint Victor Veroda of Cuba, Kan., as executor of this will *and hereby give unto him full power and authority to do and perform all and every act and thing necessary to carry this will into effect.*" (Italics ours.)

On May 20, 1930, Dolezal's will was admitted to probate, and on the same day Victor Veroda filed his bond as executor with the defendants in this action, Krhounek and Sterba, as sureties. This bond was approved forthwith.

Some four years and three months later, on September 8, 1934, Veroda, as executor, filed in the probate court his final account. This was duly approved by an order of court, which contained a finding as follows:

"The court further finds, orders and decrees that the estate had been fully administered and that all of the debts of deceased have been paid in full."

The judgment roll also recited that final publication notice had been made and proof thereof filed, and that upon Veroda, as executor, taking a receipt from himself, as trustee under the will, and filing the same in court, he, the executor, would be discharged and his bondsmen released.

On the same day, September 8, 1934, the executor filed in court the required receipt, as follows:

"IN THE PROBATE COURT.

"In the Matter of the Estate of John Dolezal, deceased.

"Received this 8th day of September, 1934, of Victor Veroda as executor of the estate of said decedent, two hundred and fifty-two & 74/100 dollars. In full payment of my claim against said estate, allowed by said court —————, 19——.

"For balance on hand for distribution as per final a/c.

"VICTOR VERODA, *Trustee of and for Anna Kozak.*

The probate court record concluded thus:

"Whereupon, comes Victor Veroda, executor, and files herein the receipts of said Victor Veroda, trustee for the sum of money due him, as shown by the final report of said administrator, as heretofore ordered, and he is hereby discharged as administrator and his bondsmen released from further liability, *this 8th day of September, 1934.*"

On January 5, 1938, Anna Kozak died testate, naming Victor Veroda as her executor. The terms of her will are of no present concern. Veroda had become a resident of Texas, and N. J. Ward was appointed and qualified as administrator with the will annexed, and in that capacity he brought this action on February 6, 1939— 4 years, 4 months, 28 days after the date of the order of the probate court approving the executor's final account, discharging him as executor and releasing his bondsmen.

In plaintiff's petition the facts summarized above are pleaded; also that Victor Veroda had not accounted to the probate court for all the assets and moneys received by him as executor of the Dolezal estate, that he had received personal assets of that estate to the amount of $5,300, "consisting largely of money on deposit"; that an item of $350 for his services, which he had listed and charged in his final account, was "an improper one and should not be allowed"; that during the years of his executorship of the Dolezal estate he "had handled the estate without order of court"; that since the death of Anna Kozak parties properly concerned had made demands for an accounting, and the probate court had likewise made such demand; and that—

"The defendant, Frank Sterba (one of the sureties of Veroda, executor) is the secretary of and the officer in control of the records, files and assets of the Associated Lodges of Cuba, Kan., which is an association of a number of fraternal organizations located at Cuba, Kan., and which owns a building and other property in Cuba, Kan., and which issued certificates of indebtedness in order to obtain money to construct such building and obtain such property.

"The said Victor Veroda, while acting as executor under the said will of John Dolezal, illegally invested a large portion of the assets entrusted to him into certificates issued by such association of lodges, and at the death of the said Anna Kozak held several of such certificates, and which are of little value. The said Victor Veroda and the defendants Sterba and Krhounek were all interested in said lodges and in the association thereof, and in the project of acquiring such building, and in order to do so, it was necessary to raise funds; and the three mentioned, together with the others, did work together in the acquiring of such property and in the acquiring of funds therefor, and all participated in the acts of the said Victor Veroda in the making of the investments of the assets belonging to said estate in the said certificates issued by the Associated Lodges."

Plaintiff's petition further alleged that Veroda had illegally invested assets of the estate of Dolezal in the aforesaid certificates of indebtedness; and that after his purported discharge as executor and the release of his bondsmen on September 8, 1934, Veroda did not qualify as trustee, but continued to handle the assets of the Dolezal

estate as he had theretofore done. Plaintiff pleaded the particulars of certain of the aforesaid certificates of indebtedness, and—

"Plaintiffs further say that at the times that the said Victor Veroda invested assets of the Dolezal estate in the said certificates of the Associated Lodges, that such were poor investments and were done for the purpose of aiding the lodges to which the said Victor Veroda, Frank Sterba, Joseph Krhounek and associates and friends belonged; and such investments were not made in order to secure the funds of said estate, and were not made in good faith, nor with reasonable care or judgment; and said certificates, when acquired, and at all times since have been of small value."

The plaintiff administrator *prayed for an accounting* and that "the defendants be required to pay him such money and property as the court concludes due the plaintiff as representing the Kozak estate," and for other proper relief.

It does not appear that service of summons was effected on Veroda or on Krhounek. Apparently they made no appearance. No judgment was entered either for or against them. In plaintiff's petition it is alleged that Veroda resided in Texas and was insolvent. There is also a footnote in plaintiff's abstract that Krhounek had been adjudged a bankrupt.

In this appeal the errors urged by the plaintiff-appellant are these:

"1. Trial court erred in sustaining demurrer of Frank Sterba to the plaintiff's second amended petition.

"2. Trial court erred in rendering judgment against the plaintiff in favor of Frank Sterba."

Withholding for the nonce a consideration of the legal questions raised in the demurrer of Frank Sterba, who was the only defendant before the district court or now in this court, we are at a loss to discern how Frank Sterba could comply with the prayer of plaintiff's petition for an accounting if he were altogether willing to do so, or even if the trial court and this court should give judgment accordingly. Sterba was only a surety for the executor of an estate which was wound up and closed years ago. Sterba could not render the accounting demanded. His bonded obligation was not to render an accounting of the Dolezal estate if Veroda, the executor, and principal on the bond, failed in any respect thereto. It did bind him as surety in the sum of $11,200 or for whatever part thereof might be necessary to make good any delinquency of Veroda in respect to moneys, chattels, and real estate which should come under his control as executor, with the other usual covenants of an executor's bond, and concluded with the recital that the executor—

"shall pay any balance remaining in his hands upon the settlements of his accounts, to such persons as said probate court, or the law, or the will of said testator shall direct, then this obligation to be void; else in full force and effect."

It should be obvious that under the terms of such an obligation, before any liability could be decreed against Sterba, the surety, there would have to be an adjudication that Veroda had violated his duty as executor in some respect, and that the extent thereof had been reduced to a money judgment. Until that be done, if it could yet be done, there is nothing Sterba the surety can do about it and nothing the court can compel him to do.

Cases can doubtless be found where sureties have been impleaded in an action for an accounting against their principal, whether executor, administrator, guardian or trustee. (21 Am. Jur. 933, § 992; Anno.—Fiduciary's Bond—Liability—Accounting, 119 A. L. R. 83, 103 *et seq.*) They would at least be proper parties, if not necessary parties. (Phillips on Code Pleading, 1st ed., 481-487, § 453-457; Merwin on Equity and Equity Pleading 543, § 944 *et seq.*) But we have been cited to no precedent and would not expect to find one where a surety himself was held liable on an unadjudicated delinquency of his principal. In our reports, what analogous cases we have are to the contrary. (*Stratton v. McCandless,* 27 Kan. 296; *Hudson v. Barratt,* 62 Kan. 137, 61 Pac. 737; *Fitzpatrick v. National Surety Co.,* 148 Kan. 303, 80 P. 2d 1059.)

Coming to the precise questions of law raised by the defendant surety's demurrer, the action which plaintiff sought to maintain was a collateral attack upon the judgment of the probate court. Although that court is one of limited jurisdiction, its judgments within the scope of its jurisdiction, unappealed and unreversed, are as binding as those of a court of general jurisdiction. (*Smith v. The Eureka Bank,* 24 Kan. 528, syl. ¶ 1; *Sparr v. Surety Co.,* 99 Kan. 481, 483, 162 Pac. 305; *Schmidt v. Simmons,* 136 Kan. 666, 17 P. 2d 835; *Gaston v. Collins,* 146 Kan. 449, 456-458, 72 P. 2d 84, and citations.)

Granting for argument's sake that the probate court's approval of the executor's final account was improvidently made, that the executor's account was defective, inaccurate, or incomplete, and that it contained items charged against the Dolezal estate which should have been rejected, it cannot be gainsaid that the probate court had jurisdiction of the cause, that it had power to approve that account, and that its judgment to that effect, and discharging the executor

and releasing his bondsmen was a judgment it had power to make; and that judgment is unassailable at this late date.

Furthermore, the action which plaintiff sought to maintain, being merely a collateral attack on the judgment, under all the rules of practice as well as a plethora of our own decisions, such an attack on that judgment was not maintainable. (*Proctor v. Dicklow,* 57 Kan. 119, 45 Pac. 86; *Schmidt v. Simmons,* supra.) In *Roberts v. Wallace,* 141 Kan. 717, 42 P. 2d 594, it was said:

"Where a probate court makes an order directing an executor to make distribution of an estate, and the parties are all given due notice of the hearing, the order is final unless an appeal is taken." (Syl. ¶ 1.)

See, also, 1 Woerner's Law of Administration, 3d ed., § 145; 4 Schouler on Wills, Executors and Administrators, 6th ed., 2771, § 3442; and *Gaston v. Collins,* supra.

Appellant suggests that when Veroda was discharged as executor and assumed the role of trustee under the will of Dolezal, he did nothing to qualify as such trustee. Apparently the diligence of counsel has discovered that either by statute or by practice in some jurisdictions some such formality is required. Not so in Kansas, however, unless the will so provides or a court of competent jurisdiction so requires. Prior to the adoption of our new probate code, July 1, 1939, art. 15, sec. 116, G. S. 1939 Supp. 59-1505, a transfer of the assets from Veroda as executor to himself as trustee, as acknowledged in the receipt set out above, was quite sufficient. (*Cook v. Nelson,* 209 Wis. 224, 244 N. W. 615; *Mackey et al. v. Coxe,* 59 U. S. [18 How. 100], 15 Law Ed. 299; 24 C. J. 1068 and notes; 11 R. C. L. 304-306; 21 Am. Jur. 794, § 737.)

The powers of an executor are not necessarily so restricted as those of an administrator. The testator may confer much broader powers on him than the law confers on the latter. So, too, the powers of a testamentary trustee are those which are conferred upon him by the will, subject to certain qualifications imposed by public policy. A fair reading of Dolezal's will clearly discloses that Veroda's powers *first* as executor and *later* as trustee of the estate for the benefit of Anna Kozak were unusually broad, and it cannot be said that the investments complained of were not authorized. (See fourth paragraph of Dolezal's will quoted above.) Moreover, the record shows that in his final accounting as executor, if not before, Veroda did inform the probate court touching the status of the investments he had

made in certificates of indebtedness of the Associated Lodges of Cuba, Kan.

The other objections to the judgment have been carefully considered, but they do not require discussion.

Judgment affirmed.