No. 34,645

THE CITY OF WICHITA, *Appellee*, v. (THE HOME CAB COMPANY, Defendant) MARY A. HUFFMAN, *Appellant.*

(101 P. 2d 219)

Opinion filed April 6, 1940.

*H. C. Castor, Thomas E. Elcock, John W. Adams* and *John Boyer,* all of Wichita, for the appellant.

*Vincent F. Hiebsch* and *K. W. Pringle,* both of Wichita, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action against the principal and surety on a bond given pursuant to an order of this court. The bond was given by the Home Cab Company, principal, and Mary A. Huffman, surety, in order to perfect an appeal from the decision of this court to the supreme court of the United States in the case of *Home Cab Co. v. City of Wichita,* 140 Kan. 451, 36 P. 2d 1012. Following the dismissal of the appeal in the supreme court of the United States, the city of Wichita recovered damages in the instant action on the bond, and only the surety has appealed.

The damages recovered consisted of license fees alleged to be due to the city from the cab company for the operation of taxicabs in the city of Wichita, in the sum of $4,830, together with interest on specific portions of the total amount which were claimed to be due December 28, 1934, January 1, 1935, and July 12, 1935. Recovery for specific amounts due on each of the dates mentioned was sought and obtained under three separate causes of action. The specific amounts claimed to be due on the respective dates will be discussed later under the subject of damages.

In view of the contentions of the parties a narrative of events, culminating in the execution of the appeal bond, becomes necessary. On May 10, 1933, the Home Cab Company, to which we shall refer as the cab company, instituted an injunction suit against the city of Wichita to restrain the city from enforcing ordinances enacted for the purpose of regulating taxicabs operating within that city. The particular provisions of ordinances involved in that lawsuit pertained to the filing of liability insurance policies with the city by owners and operators of taxicabs and a provision requiring the payment of license fees. When the cab company instituted its suit, it obtained an *ex parte* order restraining and enjoining the city from enforcing any of the provisions of the ordinances involved "until further order of this court, or until this matter is set for hearing by this court on the application for a permanent injunction." It was also ordered that plaintiff enter into a bond with the defendants in the sum of $1,500, with good and sufficient sureties, conditioned that the plaintiff would pay all damages that the city, its agents, servants and employees might sustain, or if it be adjudged that the restraining order or temporary injunction was wrongfully issued. A $1,500 bond was posted in compliance with the order. The injunction order

remained in full force and effect, without further action, until the trial of the case on its merits, September 8, 1933. The case was held under advisement until April 9, 1934. Theretofore and on January 22, 1934, the city filed a motion to require the cab company to furnish the insurance provided by ordinances or to post collateral by reason of the fact the cab company was not financially responsible in case of accident. In compliance with an agreement of the parties, the court ordered the cab company to comply with the insurance requirement of pertinent ordinances pending the final determination of their validity or, in lieu thereof, to provide bond. On April 9, 1934, eleven months after the city was first enjoined from enforcing its ordinances, the trial court rendered final judgment in the injunction suit. It dissolved the so-called temporary restraining order, and refused a permanent injunction.

Pursuant to the provisions of G. S. 1935, 60-3331, which provides for appeals in attachment and injunction matters, the court ordered that plaintiff be given ten days from the date of judgment to perfect its appeal, and that the order setting aside the temporary injunction be suspended during that time and pending the appeal, in the event an appeal be taken. In the journal entry of judgment the trial court referred to the injunction order as a temporary restraining order. From that judgment the cab company perfected an appeal to this court. The city appeared in this court and moved that the restraining order be dissolved, pending the final determination of the appeal on its merits. In support of its motion, it showed that the ordinances were being violated by taxicab drivers and that by reason of the restraining orders obtained by this plaintiff and other cab companies, the ordinances had not been in force and effect for a period of over eighteen months. Our attention was directed to the fact that the principal issues involved in the appeal in the instant case had been determined by this court in the former case of *Peoples Taxicab Co. v. City of Wichita*, 140 Kan. 129, 34 P. 2d 545. The court heard arguments of counsel for the respective parties and dissolved the injunction in all respects *except as to the license fee*. It then ordered that the question of the license fee be assigned for hearing on the 3d day of October, 1934. On that date the appeal was presented on its merits, and on November 3, 1934, this court affirmed the decision of the district court. (*Home Cab Co. v. City of Wichita,* supra.) In that decision this court called attention to the fact that the question concerning the validity of the license fee

had been determined in the case of *Peoples Taxicab Co. v. City of Wichita,* supra. We likewise stated that the question of the sufficiency of plaintiff's interest in the operation of taxicabs to bring the instant suit had been determined in the case of *Peoples Taxicab Co. v. City of Wichita,* supra. The Home Cab Company desired to perfect an appeal to the supreme court of the United States. After the petition for rehearing in the Home Cab Company case had been denied, this court entered an order withholding the sending of the mandate to the district court, upon request of the cab company, pending its appeal. The city requested that this court fix the time for the appeal and that it fix the amount of the appeal bond, in order to adequately protect the city. A showing was made by the city relative to the amount alleged to be due and unpaid for license fees and that the cab company was not financially responsible for and could not pay the amount due and unpaid for license fees; that the injunction bond in the sum of $1,500 was wholly inadequate to cover license fees for the year 1933; that unless this court required the cab company to post its appeal bond before the end of the year 1934, the city would have no means of recovering the license fees for the year 1934. The city requested that the cab company be required to post a supersedeas bond covering the damages and costs for not less than $11,000. The cab company replied by a motion stating it had no objection to this court's fixing a reasonable amount for a *supersedeas bond* to cover *damages, costs and expenses* which the city might incur by reason of the appeal to the supreme court of the United States, and requested thirty days from the date of the order fixing the amount of the bond in which to secure sureties thereon and to file the bond for the approval of this court. It did, however, state that in its opinion a supersedeas bond in the sum of $4,000 would be adequate. The cab company based its estimate as to the sufficiency of a bond in the sum of $4,000, in part, upon the amounts that, in its judgment, would be due for license fees, in the event it was finally determined the city could collect license fees under the ordinances. Pursuant to the motions of the city and cab company and upon due consideration, this court directed the cab company to furnish and file with the clerk of this court, on or before December 20, 1934, a bond in the sum of $11,000, "conditioned, that appellant will pay to the appellee *all damages and costs* that might accrue to the appellee by reason of the granting of this order." (Italics inserted.)

The cab company filed the following bond:

SUPERSEDEAS BOND

"Know all men by these presents, that we, The Home Cab Company, as principal obligor, and Mrs. Mary A. Huffman of Wichita, Sedgwick county, Kansas, as surety, are held and firmly bound unto the city of Wichita, Kansas, in the sum of eleven thousand dollars ($11,000) to be paid to the said city of Wichita, Kansas, to which payment well and truly to be made we bind ourselves, our heirs, executors, administrators and assigns, jointly and severally by these presents.

"Whereas, the above-named appellant and principal obligor, The Home Cab Company, a corporation, intends to and is prosecuting an appeal to the supreme court of the United States of America to reverse a final judgment, order and decision made and entered in the above case on December 14, 1934, denying a petition for rehearing of a decision in the above-entitled matter in which an opinion was rendered and filed on or about the 3d day of November, 1934.

"Now, therefore, the conditions of this obligation are such that if the above-named principal obligor shall prosecute its said appeal to effect and answer all costs and damages if it shall not make good its plea and shall pay all costs and damages that shall be adjudged against them on account of said appeal and/or on account of the said principal obligor failing to remit said final judgment of said the supreme court of Kansas, and shall abide the orders of this court and of the supreme court of the United States of America, then this obligation shall be void, otherwise same shall be and remain in full force and effect."

The qualifying affidavit of the surety, together with a list of her property, valued at $25,000, was attached to the bond. The appeal to the supreme court of the United States was dismissed on April 29, 1935, for want of a properly presented federal question, and for want of a substantial federal question. (*Home Cab Co. v. City of Wichita*, 295 U. S. 716, 79 L. Ed. 1672.) The instant action on the bond was filed July 12, 1935. An amended petition was filed March 11, 1936.

Is the surety liable in damages for unpaid license fees on taxicabs, which fees the city was restrained and enjoined from collecting by virtue of the injunction suit? That suit was filed May 10, 1933.

Appellant contends the order originally made on May 10, 1933, was not a temporary injunction. It urges that order was nothing more than a restraining order, which had completely spent its force when it was dissolved April 9, 1934, the date of final judgment in the injunction suit. Relative to the nature of that order, the cab company directs our attention to the fact that in a portion of the journal entry of final judgment, the trial court struck out the word

"injunction" and substituted the word "restraining," thereby indicating its interpretation of the order. It is true that this court will consider the intention of the trial court in making the order. (*In re Luttgerding*, 83 Kan. 205, 110 Pac. 95.) We are, however, also obliged to consider the order itself and its ultimate effect upon the party restrained, irrespective of the name by which it may be designated. The effect of an order is not determined by the name ascribed thereto. This order of May 10, 1933, was not made effective to a definite date in the near future nor until a hearing might be had for a temporary injunction. It was made effective until the matter was set for a hearing for a permanent injunction, or until the further order of the court. A bond was posted to cover damages and costs. No date was ever fixed for the hearing of a motion for a temporary injunction, nor was such hearing ever held. The only hearing thereafter, touching the question of the ordinance provisions for payment of license fees, was on the date the injunction suit was tried on its merits, April 8, 1933. The decision was then taken under advisement and the restraint continued in effect, without any further order, until the permanent injunction was refused, April 9, 1934. The city was therefore effectually restrained from collecting the license fees, by virtue of the order of May 10, 1933, for a total period of eleven months. In *Newbern v. Service Pipe Line and Mining Co.*, 126 Kan. 76, 78, 267 Pac. 29, it was said:

"Generally speaking, it is said that a restraining order is effective only until an application for an injunction can be heard, and usually only for a short time, while a temporary injunction is effective until the trial of the action in which it is issued. (*State v. Johnston*, 78 Kan. 615, 97 Pac. 790; *State v. Werner*, 80 Kan. 222, 101 Pac. 1004.) Sometimes the effect of the order determines the classification to which it should belong. (*In re Sharp*, 87 Kan. 504, 124 Pac. 532; *City of Emporia v. Telephone Co.*, 90 Kan. 118, 133 Pac. 858.)"

In *State v. Johnston*, 78 Kan. 615, 97 Pac. 790, it was held:

"While often used synonymously, the terms 'temporary injunction' and 'restraining order' are properly distinguished as follow: A restraining order is effective only until an application for an injunction shall be heard; a temporary injunction is a restraining order effective until the trial of the action in which it is issued. The effect, and not the name by which an order may be called, determines to which of the classes it properly belongs." (Syl. ¶ 1.)

In *Bowman v. Hopper*, 125 Kan. 680, 265 Pac. 743, it was aptly said:

"While a restraining order does not technically operate as a temporary injunction (except for the briefest practical time, to be followed up with a hear-

ing for a temporary injunction), yet by neglect of the party who procured the restraining order to follow it up or by reason of inaction on the part of the court itself, the restraining order may become, in effect, a temporary injunction, which it appears to have done in the case at bar." (p. 682.)

Under the circumstances in the instant case, the order of May 10, 1933, had all the effect of a temporary injunction until rendition of the final judgment in the injunction suit. It might also be noted that if only a restraining order was dissolved the cab company would have had no right of appeal because an appeal from a mere restraining order does not lie. (*Crawford v. Firmin,* 143 Kan. 794, 57 P. 2d 465.) When the district court dissolved the temporary injunction, it stayed the order of dissolution as provided by G. S. 1935, 60-3331, which provides for appeals in attachment and injunction matters, but does not include rulings dissolving restraining orders. (*Crawford v. Firmin,* supra, p. 797.) The injunction was therefore effective, under the order made pursuant to the statute, for a period of ten days within which the cab company could perfect its appeal and until a final decision was reached on appeal. The city was, therefore, effectually restrained from collecting the license fees until the motion for a rehearing on the decision of this court was denied, December 14, 1934. That, however, did not end the restraint of the city. It was not yet permitted to collect the license fees. In order to further continue the effect of the original injunction order, the cab company appealed to the supreme court of the United States.

Appellant insists the bond it posted in this court did not revive the original injunction order. The bond it posted in order to perfect its appeal from the decision of this court continued the effect of the injunction. The question now is, whether the surety can escape the consequences of the injunction.

Appellant further contends the bond it posted was not a supersedeas bond. The contention is not well taken. The bond which it posted, as a necessary step in its appeal, was intended to prevent and did prevent the city from collecting the license fees. The bond covered not only costs, but damages as well. The order of this court, directing the execution of the bond, required that the cab company make itself liable, not only for costs of the appeal, but for all damages resulting by reason of the order of this court. In its appeal, the cab company conformed to the provisions of 28 U. S. C. A., § 869 for the filing of supersedeas bonds. That statute reads:

"BOND IN ERROR AND ON APPEAL. Every justice or judge signing a citation on any writ of error, shall, except in cases brought up by the United States or

by· direction of any department of the government, take good and sufficient security that. the plaintiff in error or the appellant shall prosecute his writ or appeal to effect, and, if he fail to make his plea good, *shall answer all damages and costs,* where the writ is a supersedeas and stays execution, or all costs only where it is not a supersedeas as aforesaid." (Italics inserted.)

Appellant also contends it was merely prosecuting an injunction suit, that the bond was not conditioned for the payment· of license fees, that no damages were adjudged against it in the injunction suit, that no money judgment of any kind was rendered ·against it, and that there was nothing for it to remit. It therefore contends neither the principal obligor nor the surety was liable for license fees in a suit on the bond. That the purpose and intent in fixing the amount of the bond at $11,000 was to protect the city in the collection of its license fees and the costs and expenses of the appeal cannot be doubted, in view of the undisputed facts which culminated in the execution and posting of the bond. But let us first examine the bond itself. Are its conditions as limited and restricted as contended by the cab company? For greater clarity we shall separately state the conditions therein contained. The bond provided:

"Now, therefore, the conditions of the obligation are such that—

"(1) If the above-named principal obligor shall prosecute its said appeal to effect, and

"(2) answer *all costs and damages* if it shall [not] make good its plea, and

"(3) shall pay all costs and damages that shall be adjudged against them on account of said appeal, and/or

"(4) on account of the said principal obligor failing to remit said final judgment of said the supreme .court of Kansas, and

"(5) shall abide the orders of this court and· of the supreme court of the United States of America, then this obligation shall be void, otherwise same shall be and remain in full force and effect."

It is true there was no money judgment to remit license fees under condition No. 4. Under condition No. 3, the principal and surety bound themselves to pay all costs and damages "that shall be adjudged against them on account of said appeal." Condition No. 3 does not appear to be restricted to damages which might be adjudged against the principal and surety in the injunction suit alone. But, in the instant case, we need not determine whether liability for loss of license fees, by reason of the injunction, could be predicated on condition No. 3. Under condition No. 2, the principal and surety bound themselves to pay, not only costs on appeal, but all damages in the event the principal did not make good its plea. The principal did not make good its plea and it and the surety became liable for

damages. By reference to the bond heretofore set out, it will be noted the word "not" was inadvertently omitted in condition No. 2, between the words "shall" and "make." It is obvious the omission of the word "not" renders condition No. 2 meaningless. Where an omission in a bond has that effect, the word may be supplied, if by reference to the whole instrument the intention of the parties can be ascertained by doing so. (8 Am. Jur., Bonds, § 37.) We think the terms of the instant bond, when read in its entirety, clearly disclose the omission of the word "not" was a mere oversight. We have no hesitancy in supplying such an omission when to do so makes the instrument conform to the evident intention of the parties.

What damages did the parties intend the bond should cover? We think any doubt on that subject which may result from a construction or interpretation of the letter of the bond is completely resolved by the facts and circumstances surrounding its execution. Those facts and circumstances have been narrated. They compel the conclusion a bond in the sum of $11,000 was required by this court for the express purpose of protecting the city in the collection of license fees, in the event the cab company should not make good its plea. Those facts further clearly disclose the cab company made the bond fully understanding its purpose and intent. In 8 Am. Jur., 722, Bonds, § 37, the rule is stated as follows:

"In construing an instrument under seal, although the courts generally adhere closely to the letter, the prevailing rule allows a court to place itself in the position of the contracting parties and to consider, in view of all the facts and circumstances surrounding the execution of the instrument, what the parties intended. In the event the intention of the parties is manifest, such intent must control in the interpretation of the instrument, regardless of inapt expressions or mere technical rules of construction. It is proper to consider the state of the parties and the property at the time the bond was given, and determine from that instrument in its entirety and the whole condition, the purpose for which it was given, without rejecting any word, if consistent effect can be given to it. Thus, an omission in the bond which renders it meaningless may be supplied by reference to the whole instrument whereby the intention of the parties can be thus ascertained. Similarly, where by error the condition in the bond is so drawn as to lack definite meaning, it may be read in the light of the evident intention of the parties."

In *Kendall v. Black*, 99 Kan. 101, 160 Pac. 1015, it was said:

"We think the trial court was correct in holding that the bond made each defendant liable for the default of the other. It is to be construed in the light of the circumstances in which it was given, so as to effectuate its purpose. (5 Cyc. 753; 4 R. C. L. 56.)" (p. 102.)

In *Westervelt v. Mohrenstecher*, 76 Fed. 118, it was said:

"No one denies that the law favors sureties, that doubts of the extent of their liability are to be resolved in their favor, and that the burden of proof is upon the obligee to establish their liability upon their bond. But, after all is said, a bond is nothing but a contract. It is written evidence of the meeting of the minds of the parties to it,.and, subject to the rules favoring sureties to which we have referred, it must be construed by the established canons for the interpretation of contracts. The rule for the construction of contracts which prevails over all others is that the court may put itself in the place of the contracting parties; may consider, in view of all the facts and circumstances surrounding them at the time of the execution of the instrument, what they intended by the terms of their contract, and when their intention is manifest it must control in the interpretation of the instrument, regardless of inapt expressions, or more technical rules of construction. (*Accumulator Co. v. Dubuque St. Ry. Co.*, 27 U. S. App. 364, 372, 12 C. C. A. 37, 41, 42, and 64 Fed. 70, 74.)" (p. 121.)

In the instant case Mary A. Huffman was a compensated surety. In the case of *Farmer v. Rutherford*, 136 Kan. 298, 15 P. 2d 474, the rule is stated thus:

"The appellant is a compensated surety, and the rule is well established in this court that a bond will be construed favorably to the bonded, *if such construction is consistent with the object for which the bond was made.* (*State v. Construction Co.*, 91 Kan. 74, 136 Pac. 905; *Bank v. Colton*, 102 Kan. 365, 170 Pac. 992; *Centerville State Bank v. National Surety Co.*, 134 Kan. 858, 8 P. 2d 361.)" (Italics ours.) (p. 304.)

See, also, 4 R. C. L. 56, Bonds, § 17; 11 C. J. S. 419, Bonds, § 40; *Elmendorf. v. Lansing*, 5 Cow. (N. Y.) 468, 470; *Wing v. Rogers*, 17 N. Y. Supp. 153; *Sonneborn v. Libbey et al.*, 102 N. Y. 539, 550-551; *American Ex. Nat. Bank v. Goubert*, 210 N. Y. 421, 426.

Appellant next contends the district court made a specific finding that the cab drivers, by virtue of their particular relationship to the cab company, were independent contractors. It asserts that since there was no appeal by the city from that finding, the city is bound thereby. Appellant therefore contends if the city had any cause of action for ·license fees it was against the cab drivers and not against the cab company. We do not construe that one particular finding to mean that the cab company was not operating a taxicab business. We expressly held this very cab company had a sufficient interest in the taxicab business to institute the injunction suit against the city. (*Home Cab Co. v. City of Wichita*, supra.) The same decision was reached in a former case. ·(*Peoples Taxicab Co. v. City of Wichita*, supra.) The cab company in its suit enjoined the city from enforcing the ordinances, not only against it, but also

against the taxicab drivers, in conjunction with whom the cab company was conducting its taxicab business. In the petition, by virtue of which it obtained the injunction, it expressly alleged it had authority to carry on the business of operating taxicabs and automobiles for hire and everything necessary or incidental thereto. The injunction it obtained restrained the city from enforcing its ordinances against it or any of its agents, servants or employees, and from in any manner interfering with it or its agents, servants or employees in the operation of its taxicab business in the city of Wichita. It was responsible for the injunction and for the damages which flowed therefrom.

It is finally urged the judgment is erroneous as to the amount of damages recoverable under the respective causes of action. The findings of fact, upon which the conclusions of law were based, are supported by substantial evidence. That is true as to the ordinances and the amendments thereof, which the city was enjoined from enforcing. The findings touching the number of cabs and the license fees due for each cab are likewise supported by substantial evidence. Nothing occurred in the trial on that feature of the case which prejudiced any substantial right of the defendant.

Authorities on the various aspects of this case, cited in the exhaustive briefs of counsel for appellant, have received our careful consideration. We are satisfied the judgment of the trial court was correct and should be affirmed. It is so ordered.