No. 50,383

LOCAL NO. 1179, CARPET, LINOLEUM AND RESILIENT FLOOR DECORA-
TORS UNION, TOPEKA, KANSAS, and TRUSTEES OF KANSAS BUILDING
TRADES OPEN END HEALTH AND WELFARE FUND and TRUSTEES OF
KANSAS CONSTRUCTION TRADES OPEN END PENSION TRUST FUND,
*Appellees,* v. MERCHANTS MUTUAL BONDING CO., *Appellant.*

(613 P.2d 944)

Opinion filed July 18, 1980.

*C. Bruce Works,* of Topeka, argued the cause and was on the brief for the
appellant.

*Elwaine F. Pomeroy,* of Pomeroy and Pomeroy, of Topeka, argued the cause
and was on the brief for the appellees.

The opinion of the court was delivered by

HERD, J.: This is an appeal by the defendant, Merchants Mutual
Bonding Company, from a judgment for $6,421.11 entered
against it and in favor of the plaintiffs by the Shawnee District
Court following a bench trial on a suit brought on a surety bond
written by defendant. Plaintiffs are Local No. 1179, Carpet,
Linoleum and Resilient Floor Decorators Union, Trustees of
Kansas Building Trades Open End Health and Welfare Fund,
and Trustees of Kansas Construction Trades Open End Pension
Trust Fund. Several issues are raised on appeal, including a claim
that the trial court's findings are not supported by the evidence.
We therefore discuss the facts in some detail.

Local No. 1179 and the Floor Covering Association of Northeast Kansas, Inc., entered into a collective bargaining agreement on April 9, 1973. That contract by its terms was effective from April 1, 1973, until March 31, 1976. Local No. 1179 executed the agreement on behalf of its members, workmen employed in the trade within the geographic area described, designated as employees. The Association executed it on behalf of its members, designated as employers. The agreement includes familiar provisions as to union recognition, hours and conditions of employment, wages, and fringe benefits. In addition, it requires the Association to "put up an insurance security bond" in the amount of $10,000 to indemnify employees of the employers with respect to wages, health and welfare, vacation and holiday, apprenticeship and pension plan payments. The Association agrees to provide a list of its members "who are covered by said bond," and to keep the list current.

The Association made application to Merchants Mutual, through its Topeka agent, for a bond in the amount of $2,000, and on January 15, 1974, Merchants caused its endorsement as surety to be affixed to a bond from the Association as principal to Local No. 1179 as obligee in the amount of $2000, conditioned upon the Association's faithful and prompt payment of health and welfare, pension, and other fringe benefit payments required by the agreement between the Union and the Association, dated April 1, 1970. An endorsement increasing the amount of the bond from $2,000 to $10,000 was executed by Merchants Mutual on February 1, 1974. Copies of the bond and the endorsement, both signed by Merchants Mutual, were mailed by it to Local No. 1179. The original bond and endorsement were mailed to the Association, and the Association paid the required premium. The Association, thinking the originals of the bond and endorsement were copies for its files, retained them; neither original was signed by the Association and neither original was delivered to the Union.

Ed Driscoll was one of the directors of the Association at the time of its incorporation in 1973. He operated the Driscoll Floor Covering Service at Topeka, Kansas. The Association certified to the Union that "Driscoll Carpet Service" was a member of the Association on January 4, 1974. The Association's president testified in substance that Driscoll was a member of the Association continuously from January 4, 1974, until sometime after June 25, 1975. Driscoll encountered financial problems, and as a result he failed to make fringe benefit payments, including health, welfare, and pension fund payments, for his employees for January, 1975, and succeeding months. The Union knew of this default by

March 10, 1975. The Union's business agent told the local Merchants Mutual agent, in March or April, 1975, that there was a possibility that the Union "would be filing on the bond" as a result of the Driscoll default. Written notice of claim was sent by the Union to Merchants Mutual in September, 1975. Merchants Mutual responded in January 1976, stating that "your claim is not a valid one under the bond, primarily because you did not give timely notice of the delinquency. I am sorry that we cannot honor your claim under our bond . . . ."

Meanwhile, Local No. 1179 filed suit against Driscoll in United States District Court, secured an audit of Driscoll's books, and was awarded a default judgment against him in November, 1975. Driscoll filed a voluntary petition in bankruptcy and was later discharged from the judgment. Local No. 1179, joined by the trustees of the two funds, then commenced this action on the bond.

The controlling issues are these: whether the entry of a judgment in favor of plaintiffs and against the named principal on the bond, the Association, is a prerequisite to suit against the surety; whether notice of default was timely, and, if not, whether the surety is absolved of liability; and whether evidence supports the trial court's findings and judgment. We turn to these issues in order.

The Association was formed, according to its articles of incorporation, for the primary purpose of negotiating, entering into, and administering collective bargaining agreements with the employees of the member firms. This is borne out by the testimony of the officers of the Association. The Association itself had no employees; it simply presented a united front, a single entity for the purpose of negotiating and entering into a collective bargaining agreement with the Union. The Union represented its members, the employees; the Association represented management, its member floor covering contractors.

The Association itself paid no wages and no fringe benefits. Each member firm paid to its workmen the union scale provided by the April 1, 1973, collective bargaining agreement or the later amendments thereto, and each remitted monthly to the Union and the trustees the amounts required for vacation pay, health and welfare, pension, and other fringe benefits. The Association had no financial dealings with plaintiffs; it was a nonprofit corporation, was not authorized to issue capital stock, and there is no evidence that it had any assets. The Association was acting as an

agent for its member contractors when it negotiated and signed the collective bargaining agreement and when it applied for and secured the surety bond required by that agreement. The bond makes reference to and incorporates the terms of the collective bargaining agreement insofar as it requires payment of dues, vacation and holiday pay, health, welfare, and pension contributions and other fringe benefits.

The Union proceeded against Driscoll, the actual employer who was obligated to make the fringe benefit payments, and it secured a judgment against him. Looking through form to substance, as we are required to do (K.S.A. 60-2105), it is obvious that the bond was intended to protect the plaintiffs from default by Driscoll or the other member contractors in the payment of fringe benefits. A surety bond is to be construed in the light of the circumstances in which it is given, so as to effectuate its purpose. *Kendall v. Black,* 99 Kan. 101, 102, 160 Pac. 1015 (1916); *City of Wichita v. Home Cab Co.,* 151 Kan. 679, 687, 101 P.2d 219 (1940).

Defendant relies upon *Ward v. Krhounek,* 151 Kan. 414, 99 P.2d 800 (1940), where this court, under the facts before it, held that before liability could be decreed against the surety on an executor's bond in an estate long since closed, there would first have to be an adjudication that the executor had violated his duty in some respect, and that the extent thereof had been reduced to a money judgment. In the case before us, however, the obligees have pursued the principal debtor - for whom the principal on the bond was acting - and secured an accounting and a money judgment. The defalcation has been determined and adjudicated. To require also a money judgment against the Association as a condition precedent to an action against the surety would be of no real benefit to the plaintiffs or to the surety. According to the ancient maxim, *lex non praecipit inutilia, quia inutilis labor stultus,* the law commands not useless things, because useless labor is foolish. We conclude that a judgment against the Association is not a prerequisite to the bringing of this action.

We turn next to the notice of default. The bond provides that in the event of default, the obligees (plaintiffs) shall notify the surety within 30 days after the obligees shall have had knowledge of such default. No penalty is provided in the bond for failure to give prompt notice.

The evidence, outlined above, is that Driscoll was obligated to pay fringe benefits for his employees by early March, 1975, and

that he did not do so. The plaintiffs then knew that Driscoll was in default. In either March or April, the Union notified the resident agent of the surety, by telephone, of the default and the possibility that a claim would be made on the bond. A formal written claim was made in September. There was no evidence that the surety was disadvantaged or that its position was adversely affected because of delay in the giving of notice. We agree with the trial court that "there was substantial compliance with the notice requirement . . . ."

As Chief Justice Johnston observed in *Hier v. Harpster,* 76 Kan. 1, 4, 90 Pac. 817 (1907):

"Ordinarily the creditor owes the surety no active diligence . . . . The general rule is that the obligation to see that the debt is paid rests on the surety and not on the creditor . . . ."

See also *Zavesky v. Maryland Casualty Co.,* 136 Kan. 478, 483, 16 P.2d 504 (1932).

In *School District v. McCurley,* 92 Kan. 53, 142 Pac. 1077 (1914), we held that bonding companies engaged in the business of insuring the performance of contracts of others for pay are not "favorites of the law" in the sense the term is applied to accommodation sureties; that such companies are in fact insurers; and that the failure of the obligee to give notice of the principal's default in strict compliance with the terms of the bond does not relieve the surety of liability when the failure to notify resulted in no actual loss or prejudice to the surety. We said:

"The breach of a condition precedent in a bond given by an insurer for pay will not relieve the insurer from liability for any loss for which he would otherwise be liable unless such breach contributed to the loss." 92 Kan. at 58.

We conclude that under no construction of the evidence is the surety entitled to discharge in this case.

Finally, we turn to the claim that the record does not support the trial court's findings and judgment. It would unduly prolong this opinion to detail the various documents in the record, as well as the testimony of the Union officials, the agent who wrote the bond, officers of the Association, and former employees of Driscoll. We have carefully examined the evidence and find full and adequate support for the trial court's findings and conclusions.

We have not overlooked other points raised but find them without substantial merit. The judgment is affirmed.